**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| In re: Stowe Highlands Resort | } | Docket No. 159-8-07 Vtec |
| PUD to PRD Application | } | |

## On-The-Record Appeal Decision

Appellant 232511 Investments, Ltd., d/b/a Stowe Highlands ("Stowe Highlands") appealed from a decision of the Town of Stowe ("Town") Development Review Board ("DRB") dated July 19, 2007, denying Stowe Highlands's application to convert the designation for the entire 236-acre development, known as Stowe Club Highlands ("Stowe Club") from its permitted status as a Resort Planned Unit Development ("Resort PUD") to a Planned Residential Development ("PRD"). As this is an on-the-record appeal, we have asked the parties to submit legal memoranda on their respective positions on whether the DRB determination should be upheld or vacated.

Stowe Highlands is represented by Harold B. Stevens, Esq. The Town is represented by Amanda S. E. Lafferty, Esq. Interested Persons Christopher and Mary Lintermann, Roger and Sandra Montgomery, and Lorig and Sevan Yekhpairian are represented by Carl H. Lisman, Esq. Interested Person Leighton C. Detora, Esq. represents himself. Interested Person Monya Hirschfeld is represented by Edward B. French, Esq. and Jennifer B. Colin Dall, Esq. Interested Person Dominique Root is represented by George K. Stearns, Esq.

Interested Persons Detora and Hirschfeld have each filed motions to affirm the DRB Decision. Interested Persons Montgomery, Lintermann, and Yekhpairian have joined Attorney Detora's motion. Pursuant to V.R.E.C.P. 5(h)(1)(A) and V.R.A.P. 11(b), the Town has filed the record for the proceedings below ("Record"), which includes a brief reference to the prior permit proceedings concerning the Stowe Club development. The Town has chosen not to state a specific position on the pending motions. Stowe Highlands opposes the Interested Persons' motions to affirm and has moved the Court to vacate the July 19, 2007 DRB Decision and remand their pending application back to the DRB for a hearing on the merits.

## Factual Background

In this on-the-record appeal, our role as a reviewing tribunal is similar to the appellate function of our Supreme Court; we are not charged with the responsibility of taking new

evidence. See In re: Miller Conditional Use Application, Docket No. 59-3-07 Vtec slip op. at 4 (Vt. Envtl. Ct. Nov. 5, 2007) (citing In re Grievance of Muzzy, 141 Vt. 463, 470 (1982) for the analogous standard of appellate review of administrative determinations). Thus, we will uphold the factual findings of the DRB if those facts are supported by substantial evidence in the record. See Miller, Docket No. 59-3-07 slip op. at 3-6 Vtec (Vt. Envtl. Ct. Nov. 5, 2007) (explaining the standard of review for factual findings in on-the-record appeals).

With this procedural preface, we have reviewed the Record of the DRB proceedings below. The Record reveals the following facts:

1. Stowe Highlands initially submitted an application to amend its Resort PUD permit so that it could merge its remaining lots,[1] currently having a total area of approximately 22 acres, and subsequently subdivide that undeveloped land into 14 new lots, upon which would be constructed 13 new "Village Homes." This plan would have replaced the previously permitted proposal to construct a 30-room hotel or inn, restaurant, lounge, and parking on the same parcel of land.

2. The DRB denied this application and Stowe Highlands appealed to this Court. See Appeal of 232511 Invs., Ltd. d/b/a Stowe Highlands, Docket No. 67-4-04 Vtec (Vt. Envtl. Ct. Apr. 26, 2005). We upheld the DRB denial of the application to amend the Resort PUD permit in such a manner; Stowe Highlands thereafter appealed to our Supreme Court.

3. The Supreme Court upheld our April 26, 2005 decision in part. In re Appeal of 232511 Invs., Ltd., 2006 VT 27, 179 Vt. 409 (2006). The Supreme Court held that the Resort PUD provisions of the Zoning Regulations for the Town of Stowe, Vermont ("Regulations") prohibited Stowe Highlands's proposed amendment, in that it would essentially eliminate the resort component of the Stowe Club development, would convert the development to a "single-use PUD" and would thereby "strip the Resort PUD designation of its value as a tool for land-use planning." Id. at ¶12. Stowe Highlands was thereafter left with a single option, if it wished to continue with its plan to replace the once-planned resort component of its development with thirteen clustered homes on 22± acres: it must seek a permit conversion of the entire Stowe Club planned unit development from a Resort PUD to a single use PUD or PRD.

---

[1] It appears from the Record, both in this and the prior appeals cited above, that Stowe Highlands owns four lots, known as Parcel 1 and Lots 21, 22 and 23, all of which together contain 23.4± acres of the original 236± acre development. See Appeal of 232511 Invs. Ltd. d/b/a Stowe Highlands, Docket No. 67-4-04 Vtec, slop op. at 2 (Vt. Envtl. Ct. Apr. 26, 2005). Stowe Highlands pending application appears to seek merger and subdivision of only three of its remaining lots (Parcel 1 and Lots 21 and 22), which total 22± acres.

4.     On May 9, 2006, Stowe Highlands submitted an application seeking to convert the designation of the entire 236±-acre property from a Resort PUD to a PRD.  On July 22, 2006 the DRB denied this application.  A copy of this DRB decision is included in the Record as Ex. 2.  Stowe Highlands appealed that DRB decision to this Court.

5.     This Court upheld the DRB denial of Stowe Highlands's May 9, 2006 application.  See Stowe Highlands PRD, Docket No. 184-8-06 Vtec (Vt. Envtl. Ct. Mar. 21, 2007), a copy of which is included in the Record as Ex. 3.  In announcing this determination, we noted that "[t]he DRB's conclusion that Stowe Highlands cannot be the sole applicant for the requested changes, since Stowe Highlands cannot act unilaterally in seeking to change the entire development from a Resort PUD to a PRD, is supported by substantial evidence in the record . . .."  Id. Judgment Order at 1.  Stowe Highlands chose not to appeal that Decision.

6.     On December 18, 2006 Appellant, in its capacity as successor to the original developer of the Stowe Club development, filed its Twelfth Supplement ("Twelfth Supplement") to the Second Amended and Restated Declaration of Covenants, Easements, Conditions and Restrictions for the Stowe Club Property[2] ("Amended and Restated Declaration").  The Twelfth Supplement gave notice of the developer's amendment to § 3.04 of the Amended and Restated Declaration in the following manner:

> Declarant also reserves and grants itself the right on behalf of all of the 236 +/- acre Stowe Club Property Land, lot or unit owners to apply for any and all necessary permits to change and convert the Land from a Resort Planned United Development to a Planned Residential Development or as Rural Residential Development with the necessary degree of control over the land.[3]

7.     The Twelfth Supplement also amended the "Turnover Date," extending the date upon which Stowe Highlands acceded control and authority over the administration of the development to the owners' association (including the right to further amend the Amended and Restated Declarations) to the earlier of either the developer's conveyance of a total of 78 permitted lots/units or June 30, 2015.  Id.

---

[2] A copy of the full text of the Second Amended and Restated Declaration of Covenants, Easements, Conditions, and Restrictions for the Stowe Club Property by Robinson Springs Partnership, Declarant (dated September 2, 1993) ("1993 Declaration") was filed as part of the record as Exhibit 9 in Docket No. 184-8-06 Vtec.  The 1993 Declaration is a set of covenants, easements, permits, and licenses by which the developer seeks to retain certain development rights for itself, its successors, and assignees.  The 1993 Declaration also establishes some intra-property governance for current and future lot owners and encumbers lot owners' use of their properties.

[3] A copy of the Twelfth Supplement is included in the Record as part of a multi-paged Record Ex. 9

8.    On March 30, 2007, Appellant informed the individual Stowe Club owners that, while it disagreed with this Court's March 21, 2007 Decision, it planned to submit a new application listing all the lot owners as co-applicants and that it planned to sign the new application on all the individual lot owners' behalf, pursuant to the authority it conveyed to itself under the Twelfth Supplement. A copy of Stowe Highlands's attorney's notice to the individual lot owners is included in the Record as Ex. 4.

9.    Shortly after Stowe Highlands informed the individual owners of its plan to submit a new application on their behalf, several owners informed Stowe Highlands that they did not and would not give their consent or permission to Stowe Highlands to submit an application on their behalf. See Record Exs. 5-7.

10.    On May 17, 2007 Stowe Highlands submitted another amendment application to the Stowe Zoning Administrator, claiming authority on behalf of all Stowe Club owners to have the entire development converted from a Resort PUD to a PRD. A copy of this application and supporting documents is included in the Record as Ex. 9. The application cover letter explains that "Stowe Highlands is now filing this new application on behalf of all the owners of the Stowe Club Property as their agent pursuant to Twelfth Supplement to Declaration." Id.

11.    In the two months after Stowe Highlands submitted this most recent amendment application, but before the DRB issued its decision, the DRB received numerous letters from individual Stowe Club owners, some of whom are Interested Persons in this appeal, expressing their displeasure with Stowe Highlands's application and its assertion that it was their agent.[4] See Record Exs. 10–19; 21–23. Interested Person Root also filed a memorandum with the DRB, attacking the legal underpinnings of Stowe Highlands's assertion of agency status. Record Ex. 24.

12.    The DRB issued its decision on July 19, 2007. Record Ex. 25 ("July 19 Decision"). In the July 19 Decision, the DRB held that Appellant did not have full control over the 236-acre property because the property had been substantially developed, had infrastructure in place, most lots had been sold, and many private homes had been built. July 19 Decision at 3. Because the DRB determined that Zoning Regulations § 2 at ¶¶ 94 and 95 required a PRD or PUD applicant to control the entire development, so that the DRB could review the entire proposed PRD and

---

[4] A brief, yet representative, letter written by lot owner Merna De Coveny reads: "As a homeowner in the Stowe Club development, I do not wish to be named on the Application submitted by [Stowe Highlands's attorney] Harold B. Stevens. I am not represented by him and have sent him a letter informing him of such." Record Ex. 14.

impose necessary conditions[5] regarding open space, the road network, the configuration of lots and how the proposed development relates to its neighborhood, the DRB determined that it could not review Stowe Highlands's application as currently presented. Id at 3–4.

13.     The DRB specifically noted in its July 19 Decision that it was not deciding "whether the Twelfth Supplement [was] valid or invalid, preferring to leave that matter to the courts." Id at 2. Instead, the DRB focused upon the "threshold question" of "whether the Twelfth Supplement provides control over all 236 acres of land." Id. The July 19 Decision concluded by asserting that "[d]espite the language of the Twelfth Supplement, the applicant still does not have the authority to make changes to lots and other land in the existing Resort PUD that it does not own and which the Board may require [by way of conditions imposed upon any approval of the application]."

14.     Appellant thereafter appealed the July 19 Decision to this Court.

## Standard of Review

As discussed above, our review in an on-the-record appeal is limited: we will affirm the factual findings of a DRB where its record contains substantial evidence to support such findings. However, we are authorized to review the DRB's legal conclusions in an on-the-record proceeding for error, without deference. See In re Beckstrom, 2004 Vt. 32, ¶ 9, 176 Vt. 622, 623 (2004) (quoting In re Gulli, 174 Vt. 580, 582 (2002) (mem.). We are also directed to apply the substantive legal standards that were applicable before the DRB. 10 V.S.A. § 8504(h). We proceed with our analysis here with those directives in mind.

## Discussion

Appellant's Statement of Questions and the July 19 Decision each focus on the issue of whether Appellant had sufficient control over the property or authorization to submit the pending amendment application on behalf of all the Stowe Club owners. In determining whether the Regulations require this element of control in PRD or PUD applicants, the DRB in its July 19 Decision began its analysis by examining the definitions for PRDs and PUDs found in Regulations § 2.

---

[5] The DRB does not specifically cite to its authority to impose conditions in connection with its review of PUD and PRD applications. However, this may simply be because of its familiarity with the Zoning Regulations and the long history of Stowe Highlands's applications. Our review leads us to Zoning Regulations §§ 18 and 19, which provide separate review criteria for PUDs and PRDs.

Section 2 at ¶ 94 defines a PRD in part as "[a] parcel of land controlled at the time of application by an individual, corporation, partnership, or an association to be developed as a single entity for dwelling units."  Section 2 at ¶ 95 defines a PUD as "[a] parcel of land controlled at the time of application by an individual, corporation, partnership, or an association to be developed as a single entity."  Id.  While both terms are defined as authorizing development that may contain lots that deviate from the lot size limitations contained in the Zoning Regulations, only PUDs are also authorized to deviate from the "uses, lot coverage and open space requirements which these Regulations normally require in order to achieve cluster development and preserve open spaces.  Id.

The DRB also noted that the Regulations define the term "applicant" as "the owner of record, an optionee, or his agent duly authorized in writing."

The DRB reasoned that the Regulations require a PRD or PUD applicant to have control over the entire property proposed for development, so that the property may be "developed as a single entity."  The DRB reasoned that without the ability to make changes (such as changing lot lines, existing building locations, or existing road design) to all of the 236-acre property, the DRB was deprived of the level of review that the Zoning Regulations require.  We agree with the DRB's legal conclusions here, for the following reasons.

As an initial matter, we note that the Regulations authorize and require the DRB to review all aspects of a proposed PRD.  A PRD application must earn approval under both the sections of Zoning Regulations dealing the PRDs as well as under the Subdivision Regulations.  Zoning Regulations § 18.1.  When reviewing an application under the PRD regulations, the DRB may impose or waive certain dimensional requirements and it may require certification of water supply and sewage systems.  Zoning Regulations § 18.3.  When applying the Subdivision Regulations, the DRB may review the application and impose conditions relating to issues such as the character of the land, natural and scenic features, traffic, and building areas, among others.  Subdivision Regulations § 5.1.  These thorough review powers, combined with the mandate that a PRD be "developed as a single entity," support the assertion that the DRB may conduct a probing evaluation of a PRD application.  Therefore, the issue of whether a developer has control over the entire property, necessary for the DRB to conduct its thorough review, is an important threshold question.

We have often analyzed and discussed the review made necessary by municipal land use regulations. We have noted that such regulations often require developers to meet an initial burden of producing sufficient evidence to show their interest in or title to the property to be developed. In re: Leiter Subdivision Permit, Docket No. 85-4-07 Vtec (Vt. Envtl. Ct. Jan. 2, 2008); Clermont Terrace Site Plan and Zoning Permit Approvals (Appeal of Curtis), Docket Nos. 46-2-05 Vtec and 72-4-05 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 22, 2006); Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. Jan. 24, 2006); Appeal of Van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec (Vt. Envtl. Ct. Jan. 13, 2006); Appeal of Bowman, Docket No. 70-5-96 Vtec (Vt. Envtl. Ct. June. 21, 2005); and Appeal of Cole, Docket Nos. 174-10-01 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. May 12, 2003).

In the instant case, there was no argument presented to the DRB that Stowe Highlands had applicant status through being the owner of record or an optionee of all Stowe Club properties. Rather, Stowe Highlands asserts that it has applicant status, and therefore control over the property, as the lot owners' agent. The DRB reviewed the Twelfth Supplement in search of Stowe Highlands's authority to control all parcels within the Stowe Club property, since Stowe Highlands sought to change the entire development's status as a permitted Resort PUD to a single use PRD. It found no such authority in the Twelfth Supplement. Our review of the Record leads us to concur with the DRB. We therefore conclude that the Record contains substantial support for this factual conclusion.

It is important to note that the DRB refrained from deciding whether the Twelfth Supplement was a proper vehicle for Stowe Highlands to present itself as the authorized agent for all individual lot owners, for the purpose of requesting authority to convert the entire Stowe Clubs development from a Resort PUD to a single use PRD. We commend the DRB for exercising this restraint. As a court of limited subject matter jurisdiction, we must exercise similar restraint. We are not authorized to adjudicate disputes between principals and those who profess to be their authorized agents. The authority to resolve such disputes rests with the Superior Court.

There is a fine line of distinction between addressing whether an applicant has met her threshold burden and stepping outside our subject matter jurisdictional mandate. Our original and appellate subject matter jurisdiction is confined to a certain set of statutorily defined causes of action. 4 V.S.A § 1001(b). While we may consider whether an applicant has met the

threshold burden by demonstrating an interest in property, any further issues must be litigated in a court of competent jurisdiction. Leiter, Docket No. 85-4-07 Vtec slip op. at 5 (Vt. Envtl. Ct. Jan. 2, 2008). Thus, we neither decide whether nor to what extent a principal-agent relationship exists between the parties in this appeal. Instead we examine whether the DRB's finding that Stowe Highlands had not met its threshold burden of demonstrating the requisite amount of control is supported by substantial evidence.

An agency relationship exists when one party, the principal, provides authority or consents to another party acting as their agent. Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 317 (2001) (quoting Kimco Leasing Co. v. Lake Hortonia Properties, 161 Vt. 425, 429 (1993); see also Restatement (Third) of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (the 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act"). The issues of whether the parties have created an agency relationship and with what authority the agent is vested are factual questions that may be inferred by the conduct of the parties, a written authorization or the circumstances of a particular situation. Rule v. NH-VT Health Svc., 144 Vt. 323, 326 (1984); see also Young v. Lemon, 121 Vt. 474, 477 (1960) ("The fact of agency may be shown by the circumstances. It may be inferred from the conduct of the parties and may arise from a single transaction") (citations omitted). We must look for a meeting of the minds between the lot owners and Appellant, specifically looking for acts done by the lot owners as principals to give rise to the agency relationship. 3 Am. Jur. 2d Agency § 15 (2007).

The DRB stated in its July 19 Decision its conclusion that despite the language of the Twelfth Supplement, Stowe Highlands did not have the authority to make changes to individual Stowe Club lots that the DRB might require, pursuant to the Regulations. July 19 Decision at 3. Stowe Highlands argues that the Amended and Restated Declaration permits Stowe Highlands to freely make amendments and that it exercised such authority by promulgating the Twelfth Supplement. We therefore turn our inquiry to the authority Stowe Highlands asserts.

We note that restrictive covenants, as servitudes, generally "may be modified or terminated by the agreement of the parties, [or] pursuant to [their] terms . . .." Restatement (Third) of Prop.: Servitudes § 7.1 (2000). However, in so-called common-interest communities, communities in which lot owners must contribute to a lot-owners' association or to the upkeep of

commonly-held property, the rules of servitude modification change in some important respects.[6] Common-interest communities are often formed by a declaration that includes a number of servitudes that restrict how eventual lot owners may use their property, just as the Amended and Restated Declaration imposes servitudes on the Stowe Club lot owners in this case. See id. at § 6.1 cmt. a (giving background on the common-interest community and explaining the usual elements thereof).

Lot owners in these communities generally rely upon representations made in the declaration of servitudes when purchasing lots and they expect that future development will be of the same character as existing lots or other sales representations. Id. at § 6.21 cmt. a. Therefore, the law generally recognizes that when a developer seeks to change a declaration, it "may not exercise a power to amend or modify the declaration in a way that would materially change the character of the development or the burdens on the existing community members unless the declaration fairly apprises purchasers that the power could be used for the kind of change proposed." Id. at § 6.21. Thus, in order to satisfy its threshold burden of demonstrating authority over the entire property by the use of the Twelfth Supplement, Stowe Highlands would need to show some evidence that the Amended and Restated Declaration put lot owners on notice that it might claim the authority to submit this kind of application on their behalf.

It is again proper to note the limited nature of our inquiry. We will not determine the parties' rights under the Amended and Restated Declaration conclusively. Instead, we look to the record to determine whether the DRB's finding that Stowe Highlands did not have sufficient control over the entire property is supported by substantial evidence in the record. Because the record demonstrates that Stowe Highlands did not meet its threshold burden, we must affirm the DRB's July 19 Decision.

The record is somewhat limited regarding the full text of the Amended and Restated Declaration. In this Docket, the only parts of the Amended and Restated Declaration that appear to have been presented to the DRB in this proceeding are the Tenth and Twelfth Supplements. However, an earlier copy of the Amended and Restated Declaration was filed as part of the record in Docket No. 184-8-06 Vtec, which concerned an earlier application proceeding before the DRB. We do not have the First through Ninth, Eleventh, or any other Supplements to the

---

[6] See also Restatement (Third) of Prop.: Servitudes § 6.1 cmt. a (stating that the concept of common-interest community also includes planned developments).

Amended and Restated Declaration. However, we believe that the DRB in the first instance and this Court on appeal had sufficient evidence presented to complete the necessary legal analysis.

Stowe Highlands asserts that it and its predecessors had always retained the right to unilaterally amend the Amended and Restated Declaration pursuant to its § 9.01(c), which reads as follows:

> The Declarant may reasonably amend the Declaration without the consent of any Owner, (x) prior to the sale by the Declarant of 40 of its Lots or Units notwithstanding the 19 Lots previously sold by Declarant's predecessor in title, or (y) at any time in order to comply with any provision of law; any such amendment, upon execution and certification by the Declarant, and recording by the Town Clerk of the Town of Stowe, shall be effective upon recording.

Thus, the evidence presented to the DRB, as reviewed by us in this on-the-record appeal, does not show that Stowe Highlands has the right to unilaterally amend the Declaration. The right to amend is constrained by a reasonableness requirement: the developer may reasonably amend the Declaration without lot owner consent before the sale of a certain number of lots or to comply with "any provision of law." We view this "reasonableness" standard, self-imposed by the Stowe Club developer, to be aligned with the restrictions upon the ability of common-interest community developers to unilaterally make wholesale amendments to declarations after the sale of community properties, as articulated in the Restatement (Third) of Prop.: Servitudes § 7.1.

In its most recent review of the Stowe Club development, our Supreme Court noted that in "[c]onsidering the project in light of the municipal plan and the character of the area, the Board may have legitimate reasons to approve a mixed-use Resort PUD in an area of Stowe where it would deny a single-use PRD. With respect to their eventual uses, the two forms of development are fundamentally different, carrying with them different implications for the specific area and for the town as a whole." In re Appeal of 232511 Invs., Ltd., 2006 VT 27, ¶ 12, 179 Vt. 409, 414 (2006). While not specifically referenced by the DRB, we believe this articulation provides additional support for the DRB's legal conclusion that a PRD applicant must come to the DRB with authority to control the entire area proposed for development. Thus, we conclude that the DRB accurately interpreted the Regulations in its conclusion that Stowe Highlands did not have sufficient control so as to allow the DRB to review or approve its request that the Stowe Club development be converted from a Resort PUD to a single use PRD.

The purpose of the Resort PUD according to the Regulations is "[t]o allow a large resort, being a self-contained complex insulated from and not intruding on surrounding areas, to be

developed for the purpose of providing housing, recreation, and services for its transient guests and other allowed uses." Regulations § 19.4. The purpose of a single-use PRD, by contrast, is "to enable and encourage flexibility of development of land to preserve open space, to integrate housing of various types into a harmonious grouping and to facilitate adequate and economical provision of streets and utilities." Regulations § 18. We view the basic legal question here as whether the amendment language of the Amended and Restated Declaration, that the developer may "reasonably amend the Declaration," without lot owner consent, prior to the sale of a certain number of lots, fairly apprised lot owners that Stowe Highlands would seek this kind of wholesale change in the character of the development.

We cannot find evidence in the record to suggest that the lot owners were apprised that Stowe Highlands may seek to make this kind of change in the entire development. Resort PUDs and single-use PRDs are fundamentally different forms of development under the Zoning Regulations. What we find missing here is the necessary "link between the evidence and the [DRB] findings,"[7] since the record is devoid of evidence that lot owners were appraised that fundamental changes to the purpose and nature of the entire Stowe Club development could be effectuated by a mere amendment to the Declarations by the developer.

The DRB's conclusion, that despite the language of the Twelfth Supplement, Stowe Highlands lacked the authority to make the changes to the entire Stowe Club development that the DRB might require, is supported by substantial evidence in the Record, including the Amended and Restated Declaration. The DRB July 19 Decision is also supported by the numerous letters from lot owners expressing their disapproval of Stowe Highlands's application submittal. See, e.g., Record Exs. 5-7, 10-11, 13 (several lot owners explaining their reaction to Appellant's application). Thus, we arrive at the conclusion that the DRB July 19 Decision is substantially supported by the record and therefore must be affirmed.

We also feel compelled to note that we cannot find any other support in the Record for Stowe Highlands's claim of agent status. As noted, agency is a consensual relationship; it is most often shown by evidence of the principal's assent to the agency relationship. Restatement (Third) of Agency § 1.01. In contradiction of that general premise, the Record here contains no specific consent by any lot owners to Stowe Highlands's claimed agency status and, in fact,

---

[7] See In re: Miller Conditional Use Application, Docket No. 59-3-07 Vtec slip op. at 5 (Vt. Envtl. Ct. Nov. 5, 2007) (citing In re: Application of Blakeman, Docket No. 167-8-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 19, 2006)).

contains ample evidence depicting many lot owners' rejection of Appellant's agency claims, particularly in the form of their numerous letters to the DRB expressing their displeasure. A thorough review of the facts and circumstances underlying Stowe Highlands's agency claim reveals substantial evidence to support the DRB's rejection of that agency claim.

For all the reasons more fully discussed above, we **GRANT** Interested Persons' Motion and do hereby **AFFIRM** the July 19, 2007 DRB Decision. A Judgment Order accompanies this Decision. This concludes the current proceedings in this Court concerning the pending appeal.

Done at Newfane, Vermont this 25th day of January, 2008.

_____
Thomas S. Durkin, Environmental Judge