**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| In re: Ledgewood Condo PUD | } | Docket No. 150-7-07 Vtec |
| CU Amend. Application | } | (On-The-Record Appeal) |

## Merits Decision

Appellant Okemo Realty, Inc. ("Okemo") appealed from the July 2, 2007, Decision ("DRB Decision") of the Town of Ludlow Development Review Board ("DRB"), denying Appellant's application to amend a pre-existing conditional use permit for an already-completed planned unit condominium development ("PUD"). Appellant's specific request is to be allowed to develop the land originally designated to satisfy the density requirements for its prior development; Appellant has offered other nearby lands it owns in place of the pre-existing density lands.

This is an on-the-record appeal, as the Town of Ludlow ("Town") has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b). The parties have submitted legal briefs, advocating whether the DRB Decision should be vacated or upheld.

Appellant is represented by Matthew T. Birmingham, III, Esq.; the Town is represented by Christopher J. Callahan, Esq. and Brendan P. Donahue, Esq; and the only other interested party to appear in this proceeding, Ledgewood Owners Association ("LOA"), is represented by Hans G. Huessy, Esq.

Appellant filed a motion to vacate the DRB decision that denied its application to amend its pre-existing PUD permit. The Town and LOA oppose Appellant's motion and have each filed briefs, requesting that this Court uphold the DRB decision. The Town also submitted the complete record ("Record") associated with the appeal, pursuant to V.R.E.C.P 5(h)(1)(A) and Rules 10-11(b) of the V.R.A.P. At Appellant's request, the Court also conducted a hearing at which all parties were allowed to present oral arguments in support of their respective positions. Having reviewed the record and the parties' briefs, the Court is now prepared to render its decision in this on-the-record appeal.

## Factual Background

In this on-the-record appeal, our role as a reviewing tribunal is similar to the appellate function of our Supreme Court. Thus, we are not charged with the responsibility of taking new evidence. See <u>In re: Stowe Highlands Resort PUD to PRD Applic.</u>, Docket No. 159-8-07 Vtec slip op. at 2 (Vt. Envtl. Ct. Jan. 25, 2008) (Durkin, J.) (citations omitted). Rather, we will uphold the factual findings of the DRB if those facts are supported by substantial evidence in the record. See <u>In re Miller Conditional Use Applic.</u>, Docket No. 59-3-07 slip op. at 3-6 Vtec (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.) (explaining the standard of review for factual findings in on-the-record appeals).

With this procedural preface, we have reviewed the Record of the DRB proceedings below. The Record reveals the following facts:

1.      In 1988, Appellant obtained conditional use Permit No. 88-196-CU from the Town of Ludlow Planning Commission[1] for the construction of "Ledgewood at Okemo" ("Ledgewood"): a fifty-two unit planned unit development condominium project to be built on a 23.9± acre parcel of land. Two site plans were presented to the Planning Commission as part of that application ("1988 site plans"); the first site plan depicts the 23.9± acre project parcel and the second site plan depicts a proposed well and reservoir on an adjoining 7± acre parcel.

2.      Subsequently, the District 2 Environmental Commission issued a series of state Land Use Permits, bearing core Permit No. 2S0691, for the seven separate buildings which house the condominium units.[2] The "involved land" of this project was comprised of three parcels. These three parcels were depicted on a survey map entitled "Plans for Construction of Ledgewood", executed by the engineering firm of Dufresne-Henry in February of 1989, and revised on November 1989 ("1989 site plans"):  Lot "A", a 13.03± acre parcel, contained the seven buildings and access roads; Lot "B", a 7.06± acre parcel, contained the original location for two wells and a reservoir, and was concurrently density land; Lot "C", a 3.81± acre parcel, which

---

[1] The Planning Commission and Zoning Board of Adjustment were previously responsible for hearing and deciding various municipal land use applications. When the Town implemented on-the-record review for its land use applications, it also created and authorized its DRB to hear such applications and related appeals.

[2] The parties have not submitted the Act 250 permit or the associated dates. The Act 250 proceedings occurred between the 1988 and 1990 municipal permit proceedings, referenced in ¶¶ 1, 5 and 6. It appears that the DRB referenced the related Act 250 proceedings for the Ledgewood project, due to the discrepancy in site plans submitted in the 1988 and 1990 municipal permit proceedings. The DRB's and the parties' reference to the Act 250 proceedings reinforce what the DRB appeared to reconcile in the 1990 municipal permit proceedings: that the 7.06± acre Lot "B" were part of the density lands pledged for this development.

was also depicted as density land and located on the north side of Okemo Ridge Road.[3] Neither Lots B nor C contained buildings or other land improvements.

3. Appellant's 1988 permit application and supporting materials depicted Lots "A", "B" and "C" as providing the necessary density land for the Ledgewood project to conform to the then-existing site density obligations from the Ludlow Zoning Regulations.[4]

4. In order to comply with the State of Vermont Environmental Protection Rules on the subdivision of land and disposal of waste, Appellant in December of 1989 obtained two "Deferral of Permit" certificates from the Vermont Department of Environmental Conservation—Nos. DE-2-2754 and DE-2-2755—which allowed Appellant to complete its subdivision without satisfying waste disposal permit requirements.[5] These two Deferral of Permit certificates referenced the two additional lots designated to satisfy the density requirements for the planned development on the Lot "A" portion of the 23.9± acres: Lots "B" and "C" above.

5. In October of 1990, Appellant applied for an amendment to Town Permit No. 88-196-CU to reduce the number of condominium units from the originally permitted fifty-two units to forty-eight units and to allow the relocation of Building "G". Appellant submitted the 1989 site plans as described in ¶ 2, above, together with the 1990 amendment application. The then-existing Planning Commission and Zoning Board Adjustment approved this amendment application, in reliance upon the associated site plans.

6. Although both the 1988 and 1989 site plans depict a 23.9± acre project parcel, the location of the density lands from the 1988 site plans deviate from the 1989 site plan.[6] There is no apparent authority from the Town acknowledging or approving this change in density lands.

---

[3] "Okemo Ridge Road" is alternately referred to in the record as "Winterplace Road".

[4] The parties did not present the Court with a copy of the 1988 Ludlow Zoning Regulations, although the June 2, 2007 DRB Decision appears to support a conclusion that the 2007 DRB was well aware of the 1988 density requirements. LOA's brief suggests that in 1988, the applicable regulations set a density limit of half an acre of land per dwelling unit.

[5] Deferral of permits were once used as a means by which a property owner could subdivide land without having to submit designs for a waste disposal system, as required by state subdivision permit regulations. The deferrals, certificates of which were recorded in the applicable zoning and land use permitting records, directed that no development on such parcels could occur until the property owner or developer complied with all applicable subdivision and waste disposal regulations.

[6] The 1988 site plan does not specify density parcels, but the 23.9± acre parcel footprint, as depicted on the 1988 site plans, does not correspond to the project footprint on the 1990 site plans.

However, because no party appealed the 1990 decision, the amended permit and attached site plans became final.

7.      Construction thereafter began on the Ledgewood project.  As units were completed, they were sold to individual owners, subject to the applicable Declaration of Condominium and By-Laws prepared on Appellant's behalf and signed in December of 1990.  Exhibit "A" from the Declaration of Condominium describes the condominium land as a 13 acre parcel, but also contains references to the aforementioned site plans, which depict the entire 23.9± acre parcel, inclusive of the additional density lands (i.e., Lots "B" and "C").

8.      In April of 1992, Appellant amended the Declaration of Condominium to include an easement for the flow of water from two wells and a reservoir over Lot "B" to provide a domestic water supply to the Ledgewood project.

9.      Appellant initiated legal action in July of 1992 against Winterplace Condominium Owners Association ("Winterplace"), an abutting condominium development, seeking a declaratory ruling from the Windsor Superior Court on the applicability and effect of a 1985[7] easement granting Appellant rights to the excess water pumped from a Winterplace well.  In 1994, the Windsor Superior Court ruled in Appellant's favor, finding that Appellant was entitled to take water from the Winterplace water supply well, in excess of the water that Winterplace is required to reserve.[8]  The effect of the Superior Court decision was that the Ledgewood project could receive all the potable water it needed from the Winterplace well.  A consequence of this confirmation of its pre-existing easement was that the Ledgewood project no longer needed to devote the Lot "B" parcel to the previously planned and permitted wells and reservoir.

10.      The Ledgewood condominium units were constructed in phases.  From 1990 until 1998, most, if not all, of the permitted forty-eight units were constructed and sold.  Those individuals who purchased units at Ledgewood gained membership in the Ledgewood Owners Association ("LOA").

11.      In April of 2007, Appellant filed an application with the DRB to amend Permit No. 88-196-CU in order to effectuate a density land swap.  Appellant sought to swap Lot "B" with another parcel—which is also owned by Appellant and is located across Okemo Ridge Road—

---

[7]   The record thus reveals that this easement was in existence prior to Appellant's initial 1988 PUD permit application.

[8]   Okemo Realty, Inc. v. The Winterplace Condo. Owners Ass'n. et al., Docket No. S0388-92 WrC (Meaker, J., Jan. 12, 1994).

so that Appellant could develop five single-family residences and an associated access road on Lot "B". However, Lot "B" was subject to the density dedication under the 1990 amended conditional use permit issued by the Town.

12. The land Appellant seeks to swap with Lot "B" includes all of Lot "C", the 3.81 acre parcel as depicted on the 1989 site plans, but also includes an additional 5 acres adjoining Lot "C" and located to the north of that parcel. These additional 5 acres proposed as the new density land for the PUD condominium project originally permitted in 1988 and now constructed are owned by Appellant and located across Okemo Ridge Road. The 2007 application also depicts a new density parcel: Lot "D" is a 0.61 acre parcel located between Lot "B" and Lot "A".

13. The DRB held two properly warned hearings on Appellant's application to amend the planned unit development on May 14, 2007 and June 11, 2007. The minutes from the May 14, 2007 meeting reveal that Appellant represented that density land swaps had been previously permitted by the DRB for the Ledgewood property and the Winterplace property, but did not present any evidence to substantiate this assertion. The minutes reveal that a DRB member questioned Appellant's assertion of DRB acquiescence for density land swaps and requested evidence of such approval at the next hearing. At the June 11th hearing, Appellant introduced maps showing changes in density lands but did not present evidence showing the DRB approved such changes.

14. During these hearings, the DRB also heard testimony from members of LOA, asserting that they relied on the 1989 site plans depicting Lot "B" as Ledgewood common land that was not to be further developed. Further, the DRB received numerous letters from members of the LOA objecting to the proposed swap of density lands.

15. On July 2, 2007, the DRB denied Appellant's application to amend the 1988 PUD permit. In its Decision, the DRB analyzed the propriety of Appellant's 2007 permit amendment request by relying on the precedent from our Supreme Court's decision in In re Stowe Club Highlands, 166 Vt. 33 (1996).

16. Thereafter, Appellant appealed to this Court for an on-the-record review.

## Standard of Review

As discussed above, our review in an on-the-record appeal is limited: we must affirm the decision of a DRB where the record as a whole contains substantial evidence to support its findings. In re Miller, Docket No. 59-3-07 Vtec (Vt. Envtl. Ct., Nov. 5, 2007) (Durkin, J.).

5

While we are authorized to review the DRB's legal conclusions in an on-the-record proceeding for error, and without deference, In re Beckstrom, 2004 Vt. 32, ¶ 9, 176 Vt. 622, 623 (2004) (citations and quotation omitted), the factual findings are afforded great weight if the DRB adequately explains its reasons for its findings. See In re Petition of Town of Sherburne, 154 Vt. 596, 605 (1990) (board's findings will ordinarily be upheld, even if record contains conflicting evidence, so long as the board adequately explains its reasons for finding as it did.). We are also directed to apply the substantive legal standards that were applicable before the DRB. 10 V.S.A. § 8504(h). We proceed with our analysis here with these directives in mind.

## Discussion

We first address a procedural issue raised by the Town concerning alleged deficiencies in Appellant's brief. The Town contends that Appellant's brief is procedurally deficient because it does not adhere to the Vermont Rules of Appellant Procedure ("V.R.A.P."), specifically V.R.A.P. 28(a)(1)-(4).

As we discussed in Miller, briefs submitted for on-the-record appeals must conform to the V.R.A.P. and are required to contain "a statement of the issues, table of contents and authorities, a statement of the case, an argument that must, among other things, contain citations to the record, appropriate authorities and statutes . . .." Miller, Docket No. 59-3-07 Vtec at 7; V.R.A.P. 28(a).

The Town contends that Appellant's brief is deficient because it does not contain a statement of issues, a clearly explained argument, or citations to the record. Furthermore, the Town asserts that the deficiencies in Appellant's brief improperly force the Court to conduct its own review of the record to establish the existence of error. See Buttura v. Buttura, 143 Vt. 95, 98 (1983).

The Town's characterization appears to be an accurate portrayal of Appellant's brief. Rather than file a brief conforming to V.R.A.P. 28(a)(1)-(4), Appellant's brief begins with a statement of the case, which sets up the factual background; then moves to an analysis of Stowe Club Highlands and its progeny; and concludes with ten numbered paragraphs that purportedly demonstrate evidence before the DRB. Appellant's brief is, in all practicality, devoid of citation to the record, which forced this Court to conduct its own review of the record to establish the existence of error. Such practice makes it difficult for a reviewing Court to secure the factual foundation to grant the requests presented in the appeal.

6

Nonetheless, V.R.A.P. 2 provides the authority for this Court to suspend the requirements of the Appellant Rules in order to expedite the decision. V.R.A.P. 2. Because the parties have submitted sufficient legal arguments so as to provide this Court with notice of the legal issues in dispute, and because the Court has already taken an extended period of time in researching and drafting this Decision,[9] we have completed our review of the substance of the appeal.

Appellant's Statement of Questions essentially focus on two issues: whether the DRB has previously permitted density land exchanges for this specific project and on neighboring projects, thereby setting a precedent for such exchanges; and whether the DRB correctly applied the Stowe Club Highlands analysis in denying the application to amend the permit. We will take each issue in turn.

**Previous Density Land Exchanges**

At both DRB hearings, held in May and June of 2007, Appellant represented—and continues to represent here—that the DRB had previously allowed a substitution of density land for the Ledgewood project specifically, and for other neighboring parcels, generally. Thus, Appellant contends, a precedent has been set by the DRB for density land exchanges. Appellant does not refute the Town's assertion that the Ludlow Zoning Regulations does not specifically allow, prohibit or even address such exchanges.[10]

The minutes from the May 14, 2007 DRB hearing reveal that several board members questioned Appellant on the assertion regarding prior DRB approval for density land swaps. The DRB members acknowledged that, possibly, ultra vires exchanges had occurred in the past, but questioned whether the DRB had sanctioned any such density land swaps. The DRB therefore requested that Appellant provide evidence of actual DRB sanctioning of density land swaps at the next hearing, which was to be held in June. Appellant's counsel represented that he would research the deeds and prior land exchanges and present the findings at the next hearing.

The minutes from the June 11, 2007 DRB hearing reveal that Appellant provided a range of maps and site plans purportedly showing occurrences of ultra vires density land exchanges, but could not provide evidence demonstrating that the DRB had sanctioned such land exchanges. Such land exchanges, had they occurred, are in direct violation of Appellant's conditional use

---

[9] The other parties have also provided sufficient citation to the DRB record.

[10] The parties have not submitted the Ludlow Zoning Regulations as part of the record; however, it was undisputed that the Ludlow Zoning Regulations does not address density land exchanges.

7

permit, specifically condition 16 from the 1988 permit, and condition 8 from the 1990 amended permit.[11]

Also during the June hearing, Appellant asserted that the LOA was only deeded 13 acres of common land per the Declaration of Condominium, and that 13 acres represented the extent of the LOA's ownership interest. A DRB member responded that in 1990, the Town approved the permit amendment for the 23.9± acre parcel, and thus, was not controlled by the subsequently administered Declaration of Condominium, which references only 13± acres of common land.

We find no support for the legal assertion that the DRB had set any precedent for approving density land exchanges. Appellant has not provided evidence of any prior DRB approval for such exchanges; Appellant did not even provide sufficient evidence that the DRB was aware of such exchanges.

We also have found no support for the legal assertion that past approval of density land swaps could somehow require unconditional approval of such swaps in the future. In this regard, we note that, both before the DRB and this Court, Appellant's argument provides no standards against which such density land swaps could be judged. Thus, Appellant appears to assert that the DRB should be directed in this appeal to allow their land swap, simply because there was some evidence presented that such swaps may have occurred in the past. We know of no such precedent and decline the opportunity to create it here.

**Stowe Club Analysis**

In reviewing Appellant's application to amend the permit, the DRB set forth and then applied the legal principles from In re Stowe Club Highlands, 166 Vt. 33 (1996). Stowe Club and its progeny have long been recognized as the proper procedural vehicle for assessing whether certain amendments to pre-existing permits, specifically amendments that affect terms or conditions that were addressed in the prior permit proceeding, should be allowed. While Stowe Club involved an application to amend an Act 250 state land use permit, this Court and our Supreme Court have recognized that requests to amend municipal land use determinations may also be properly analyzed under the Stowe Club doctrine. See In re Appeal of Hildebrand, Docket No. 228-12-04 Vtec (Vt. Envtl. Ct., Oct. 13, 2005) (Durkin, J.), aff'd 2007 VT 5. The parties here do not dispute that Stowe Club provides the proper legal analysis; they merely

---

[11] Both conditions generally require that any additions, changes, modifications, or improvements to the project are not permitted, unless the Applicant is so directed by the Town.

disagree on its proper application. We therefore proceed with an analysis of the DRB record under the Stowe Club doctrine.

As a threshold matter, it is important to note that the site plans attached to Appellant's 1990 permit amendment application were approved by the Town, were not appealed, and thus became the final permit conditions for the Ledgewood project. See In re Northern Acres, LLC, 2007 VT 109. The record reveals that the site plans from the 1990 permit amendment application depict Lot "B" as a 7.06± acre parcel, reserved as both density land and as the site for the source for the PUD's water supply.

The DRB then set forth the requirements, pursuant to Stowe Club, for when conditions from a land use permit may be amended. The DRB discussed that an amendment to a permit condition may be justified where there have arisen: "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology." In re Hildebrand, 2007 VT 5, ¶ 7. The DRB recognized that the Supreme Court refined these standards in In re Nehemiah Assocs., 168 Vt. 288 (1998) (hereinafter "Nehemiah II"). In Nehemiah II, the Court noted that the amendment standards are intended "to assist in assessing the competing policies of flexibility and finality in the permitting process". Id. at 294. The Nehemiah II Court went on to explain that "[e]ven where the Board finds such a change, there are certain situations where an amendment may not be justified, for instance where the change was reasonably foreseeable at the time of permit application. Otherwise, the initial permitting process would be merely a prologue to continued applications for permit amendments." Id. (internal quotation marks omitted).

The DRB then applied each factor from Stowe Club, and then balanced those factors with the standards set forth in Nehemiah II. First, the DRB considered whether there were any "[c]hanges in facts, law or regulations beyond the permittee's control." Hildebrand, 2007 VT 5, ¶ 7. Upon reviewing the documents Appellant placed into evidence, the DRB determined "that there hasn't been any changes to the laws, or regulations that would require the *need* for an amendment to the existing permit, that is beyond the permittee's control." DRB Notice of Decision at 3 (emphasis in original). The DRB found that the only change in fact was that Appellant sought an amendment to the permit for its own benefit. In coming to this legal conclusion, the DRB determined that the permits for Ledgewood were finalized after the 1990

9

permit amendment. The 1990 permit amendment specifically referenced the lands Appellant now wishes to develop as the lands specifically set aside to satisfy the density requirements for their now-completed PUD project. In concluding that there had not been sufficient changes under the <u>Stowe</u> Club doctrine so as to provide the legal foundation to allow Appellant to now substitute and develop the lands that were originally set aside as density lands, the DRB relied upon the site plans attached to the 1990 permit amendment application, the Act 250 permit, the condominium sales agreements and other evidence. We find that the DRB's conclusion is based on substantial evidence. Appellant has not presented a change in law or regulation—either to the DRB or to this Court— that is a legally recognized foundation for an amendment to their final permit terms. The only material change here is a desire by Appellant to now develop the lands they once pledged as density lands when they sought PUD approval.

Next, the DRB considered whether there were any "changes to technology, construction, or operations which drive the need for the amendment." <u>Hildebrand</u>, 2007 VT 5, ¶ 7. The DRB determined that the Appellant did not present any credible evidence of such changes at the hearing. DRB Notice of Decision at 4. On appeal, Appellant asserts that the decommissioned wells and reservoir on Lot "B" represent a change in technology, unanticipated in 1990, which drive the need for the amendment. However, Appellant failed to provide a factual basis for this assertion—that the "new" water resource is a change in technology, or that the Winterplace water resource was unanticipated in 1990—especially in light of the fact that Appellant held an easement for the rights to the excess water from Winterplace in 1988, prior to their initial request for permit approval to develop Ledgewood.[12]

The record reveals that Appellant contemplated a water resource that was off the project site at least prior to 1990 and thus can not now claim that the de-commissioned wells and reservoir were unforeseeable at the time it sought and obtained its last permit. See Declaration of Condominium at 3; Complaint from <u>Okemo Realty, Inc. v. The Winterplace Condo. Owners Ass'n. et al.</u>, Docket No. S0388-92 WrC (Meaker, J., Jan. 12, 1994). Further, Appellant has not provided adequate legal analysis on whether a new water resource can be construed as a change in technology that would somehow justify relinquishment of the density lands it originally pledged; rather Appellant merely cites to the legal principle on "change in technology" but fails

---

[12] <u>Okemo Realty, Inc. v. The Winterplace Condo. Owners Ass'n. et al.</u>, Docket No. S0388-92 WrC (Meaker, J., Jan. 12, 1994).

10

to apply this general legal principle to these facts. Therefore, we find that the DRB lawfully relied on substantial evidence to determine that the applicant has not satisfied this criterion.

Next, the DRB considered a range of factors and policy considerations that move beyond the Stowe Club analysis, and into the principles of flexibility versus finality, as set forth in Nehemiah II. Specifically, the DRB evaluated whether there were other factors which provide for a means to mitigate the impact addressed by the permit conditions; other important policy considerations; or manifest error on the part of the prior municipal boards in the issuance of the prior permit. DRB Notice of Decision at 4. The DRB concluded that Appellant did not present any compelling factors or policy considerations to demonstrate a need to vacate the prior permits. Upon a thorough review of the record, we conclude that the DRB referenced a substantial factual foundation for its conclusions.

Further, the DRB considered "the degree of reliance by the board [and other] parties on prior permit conditions or material representations of the applicant in prior proceeding(s)". DRB Notice of Decision at 4. Notwithstanding the fact that the Declaration of Condominium deeded 13 acres of common land to the LOA, the DRB found that private parties—specifically the LOA members—relied upon the approved density land site maps, the 23.9± acres referenced in several permits, the Act 250 application materials, real-estate advertisements, and assertions made by Appellant to prospective purchasers to conclude that:

> There is substantial documentation stating that 13 acres is the common area to where the condominium units are located, but nowhere does [the Declaration] allow for 13 acres [to be] the only land involved in the Ledgewood Condominiums. The amount of land to be set aside for density land is 23.9 acres, which would have equaled 2 units per acre under the regulations at the time of the original permitting process.

DRB Notice of Decision at 4-5.

Thus, the DRB lawfully concluded that there had been a high degree of reliance by the LOA members and the Town on the prior representations and pledge of these specific 23.9± acres for this development, which specifically includes the 7.09± acres on Lot "B". We reviewed the record and found substantial evidence to support the DRB's conclusion.

Finally, the DRB concluded that it was "unable to find any flexibility [factors] to amend[] the Planned Unit Development Permit" in accordance with Nehemiah II. DRB Notice of Decision at 5. The DRB discussed that even if it had found a factor favoring flexibility for Appellant, members of the LOA relied on the specific representation that Lot "B" was part of the

11

lands pledged for this development. The DRB took in evidence that the LOA would suffer substantial detriment to the character of the area if houses were built on the density lands and if the lands they understood to be their development's common lands where then substituted with other lands located across from the Ledgewood development. Thereafter, the DRB concluded "that the evidence supporting finality out w[eighs] that of flexibility." Id. A thorough review of the record reveals substantial evidence to support the DRB's denial of Appellant's application to amend the permit.

For all the reasons more fully discussed above, we **DENY** Appellant's Motion and do hereby **AFFIRM** the July 2, 2007 DRB Decision. A Judgment Order accompanies this Decision. This concludes the current proceedings in this Court concerning the pending appeal.

Done at Newfane, Vermont this 26th day of August, 2008.

_____
Thomas S. Durkin, Environmental Judge

12