2004 VT 32

## In re Appeal of BECKSTROM, et al.
### (H.A. Manosh, Appellant)

[852 A.2d 561]

No. 03-274

¶ 1. April 8, 2004. H.A. Manosh Corp. appeals from a decision of the environmental court declaring that a permit to erect a radio tower and support building was rendered null and void by its failure to commence construction within one year. Neighbors, comprised of persons who live in the vicinity of the proposed tower, have cross-appealed from the court's determination that the permit was not also rendered void by Manosh's alleged misrepresentations in the permit application. We affirm the court's ruling on the misrepresentation claim, but reverse its decision that the permit was void for failure to commence construction within one year.

¶ 2. This case has a complex procedural history. Manosh owns a radio tower located on what the parties refer to as the Jones property in the Town of Hyde Park. On April 18, 1997, Manosh applied for a zoning permit to erect a radio tower and support building on a separate twenty-nine-acre parcel that it owns in the town. The application described the tower as 100 feet high and the building as a "cement block structure." Several witnesses at trial testified that Manosh informed the zoning administrator at the time of the application that the company's intent was to relocate the Jones tower to the twenty-nine-acre parcel site, but that intention was not stated in the permit application, and it was established at trial that the Jones tower is closer to seventy-five feet tall, measured to the base of the metal structure rather than the foot of its concrete base.

¶ 3. The administrator approved the application as a permitted use. In fact, however, the tower was not a permitted use in the zoning district where the site was located, but no party appealed the issuance of the permit and it became final. The application form signed by Manosh stated that "[a]ny permit issued as a result of this application shall be null and void in the event of misrepresentation or failure to undertake construction within one year of approval of this Zoning Permit." The permit was issued on April 23, 1997, and showed an expiration date of April 23, 1998.

¶ 4. Within several months after issuance of the permit, Manosh became interested in revising its plans in order to relocate a different 150-foot tower (later determined to be closer to 160 feet), owned by the Lamoille County Sheriff's Department, from its existing location in the Village of Hyde Park to the new twenty-nine-acre site. In July 1997, the zoning administrator granted Manosh's request to amend the permit to allow a 150-foot tower. The amended permit was appealed shortly thereafter by an adjoining landowner, but no hearing before the zoning board of adjustment was convened. In September, Manosh applied for an Act 250 permit to erect a 150-foot tower and support building at the new site by relocating the so-called village tower and shifting the antennas from the Jones tower to the village tower, and to upgrade a logging road for access to the site. The permit was granted in November, but was later revoked in February 1999.

¶ 5. In the meantime, in August 1998, neighbors appealed the original zoning permit to the ZBA, which ruled the appeal untimely. Neighbors also appealed the administrator's decision not to institute enforcement proceedings based on neighbors' allegations that the permit was void for failure to undertake construction within one year. The ZBA ruled that the permit had not expired, citing

Manosh's undertakings in laying underground electrical conduits and upgrading the access road. The ZBA later ruled that the initial appeal of the amended permit in July had been timely, that the tower was not a permitted use, and that a conditional use permit would be required. In March 1999, the ZBA granted Manosh's application to amend the April 1997 permit, and issued a conditional use permit and site plan approval authorizing Manosh to relocate the village tower to the new site.

¶ 6. All of the ZBA rulings were appealed to the environmental court. In response to cross-motions for summary judgment, the court ruled that the original April 1997 permit was final, notwithstanding the fact that it authorized a nonpermitted use in the district, but that material facts were in dispute as to whether it had expired for lack of construction or was void based on alleged misrepresentations in the application. The court further ruled that the July 1997 amendment authorizing a 150-foot tower required a conditional use application, but remanded to the town's planning agency for further proceedings, including the filing of a more complete application and a determination whether the new permit complied with an interim bylaw, enacted by the town in January 1999, imposing a moratorium on the erection of communications towers (the April 1997 permit was exempt from the bylaw in question).

¶ 7. An evidentiary hearing addressed solely to the issues concerning the April 1997 permit was then held over two separate days in May and November 2002. In May 2003, the court issued a written decision, rejecting neighbors' claim that Manosh had made fraudulent misrepresentations in applying for the permit, but finding nevertheless that the permit had expired and was void because Manosh had failed to undertake construction within one year of its issuance. Both

parties have appealed from the court's decision.

¶ 8. Manosh contends the court erred in concluding that the permit had expired due to the failure to undertake construction within one year of its issuance. The trial court found in this regard that from January 1998 to the expiration date in late April, Manosh performed work on the road leading up to the site and installed underground electrical conduit along the roadway. The court also found that additional work "may" have been done at the tower site itself, including clearing and "some subsurface concrete work." The evidence underlying these findings shows that, during the four-month period in question, Manosh committed almost 400 work-hours to the tower project, incurring expenses in excess of $26,000. Time-sheets and testimony established without contradiction that Manosh installed utility lines, graded and graveled the road leading to the site, cleared the site, and poured concrete. Although the evidence does not identify the purpose of the poured concrete, it is reasonable to infer that it was related to construction of the "cement-block" support building specified in the permit.

¶ 9. Although we will not — absent clear error — disturb the trial court's factual findings, "[q]uestions of law are reviewed de novo, allowing us to proceed with a nondeferential, on-the-record review." *In re Gulli*, 174 Vt. 580, 582, 816 A.2d 485, 488 (2002) (mem). In concluding that Manosh failed to commence construction within the one-year permit period, the trial court here applied a legal standard which precluded consideration of work other than that directly related to the structures specified in the permit — the tower and support building. Thus, the court found that grading the access road, laying utility lines, and clearing the tower site were immaterial, and appeared to further conclude that the pouring of concrete at the site — without

more specific information — was inadequate to demonstrate that construction had commenced.

¶ 10. Although Vermont law provides little guidance on this issue, other jurisdictions have taken a broader view of what constitutes a commencement of "construction" than the trial court here, holding that the standard to be applied should reflect the purpose to be served. As one court has explained: "It is settled that the purpose of statutes or ordinances providing for automatic expiration or revocation of use permits when work has not commenced or a use established is to prevent the reservation of land for future purposes when the permittee has no good faith intent to presently commence upon the proposed use." *Cmty. Dev. Comm'n of Mendocino County v. City of Fort Bragg*, 251 Cal. Rptr. 709, 712 (Ct. App. 1988). The Court of Appeals there held that despite "the absence of actual on-site construction," *id.* at 713, the developer's good faith intent to proceed with a permitted housing project had been demonstrated through the expenditure of funds on such "pre-construction" work as engineering and architectural studies, test borings, surveying, and the removal of two small pre-existing structures. *Id.* The court thus concluded that the trial court had erred in "apply[ing] a standard concerned with the extent of construction alone," and reversed the trial court's judgment that the permit had expired. *Id.*

¶ 11. Other courts have applied a similar line of analysis. In *City of Ellsworth v. Doody*, 629 A.2d 1221, 1223 (Me. 1993), for example, the Supreme Judicial Court of Maine rejected a municipality's contention that a permit to construct a lakefront cottage had expired under an ordinance requiring "significant progress of construction" within six months of issuance. The court agreed with the homeowner "that the fact he did not actually begin construction *of the building* until two years after obtaining the permit is not determinative." *Id.* Evidence that the permittee had "cleared the site, built a driveway and installed a septic system" within six months of issuance was sufficient to satisfy the ordinance. *Id.* A similar conclusion was reached in *State ex rel. Helujon, Ltd. v. Jefferson County*, 964 S.W.2d 531 (Mo. Ct. App. 1998), where it was alleged that the developer of a casino project had failed to commence development within twelve months of issuance of a zoning permit, as required by local ordinance. The court found, however, that the clearing of trees and shrubs at a cost of over $17,000, removal of a pre-existing residence, and placement of a construction trailer on the site — while not in themselves requiring a permit — were a "necessary preliminary to the overall project" and thus sufficient to satisfy the intent of the ordinance. *Id.* at 541. Equally instructive — from the opposite perspective — is *Ross v. Montgomery County*, 250 A.2d 635 (Md. 1969), where the court affirmed a trial court ruling that a builder had failed to commence construction of a proposed apartment building within the requisite six-month permit period. The record evidence showed that all of the work on the project had been performed in a single day, and consisted of one seven-by-fifteen foot excavation and the installation of a single footing. This demonstrated, in the court's view, that the permit holder had not "in good faith, beg[un] actual construction under the building permit within a period of six months after its issuance." *Id.* at 638.

¶ 12. These decisions articulate a fair and reasonable approach to determine whether construction has commenced within the time limit imposed by a zoning ordinance or permit, focused on whether — viewed as a whole — the work, time, and expenditures invested in the project demonstrate a good faith intent to presently commence upon the permitted use. Applying that approach here, we find

that the evidence clearly supports a conclusion that Manosh commenced construction before the permit had expired. As noted, the record shows that over a period of several months, Manosh invested nearly 400 work-hours in the tower project, at a cost in excess of $26,000. The extent and duration of the work demonstrates a good faith intent to make present use of the permit, not merely an artificial attempt to preserve the permit for future use. Moreover, all of the work and money invested for grading of the access road, clearing of the project site, laying utility lines, and pouring of an undetermined amount of concrete — while not specified in the permit itself — was plainly designed to facilitate completion of the overall project. Accordingly, we conclude the trial court erred in ruling that the permit had expired before construction commenced.[1]

¶ 13. In their cross-appeal, neighbors contend the trial court erroneously rejected their claim that the permit was null and void based on allegations that Manosh had intentionally misrepresented its intent to erect a 100-foot tower when it submitted its application in April 1997. Neighbors' rather intricate theory at trial was that Manosh knew the actual height of the Jones tower was 75 feet and intentionally misrepresented its height as 100 feet. They claimed that Manosh never intended to actually relocate the Jones tower, but instead had formulated a secret intent to erect a tower between 150 and 190 feet, and hoped that approval for the higher tower would be easier to obtain, and appear to be less extreme, if

the initial permit specified a tower of up to 100 feet. The trial court was unpersuaded, finding as follows:

> Based on the voluminous evidence submitted in this proceeding, we cannot find that the April 1997 permit application was a misrepresentation of [Manosh's] plans *at the time the application was filed*. Rather, at the time it was filed [Manosh] was pursuing plans to install the Jones tower at that site, believing it to be approximately 100 feet tall, even though within a few months after that application [Manosh] had revised and expanded its plans to move the taller Village Communications tower to the site, or to install an even taller tower at the site. The April 1997 permit is therefore not void for misrepresentation at the time the application was filed.

¶ 14. We will not disturb the trial court's factual findings unless, viewed in the light most favorable to the prevailing party, and disregarding any modifying evidence, they are clearly erroneous. *In re Shantee Point, Inc.*, 174 Vt. 248, 263, 811 A.2d 1243, 1255 (2002). It is within the trial court's province to determine the credibility of the witnesses and weigh the persuasive effect of the evidence. *Id.* A finding of fraudulent misrepresentation requires a showing that Manosh knowingly made a false representation of fact, or knowingly concealed facts, with the intention to mislead or deceive. *Silva v. Stevens*, 156 Vt. 94, 103, 589 A.2d 852, 857 (1991).

¶ 15. A review of the record evidence reveals that the court's findings are amply supported by the testimony of several witnesses that Manosh's sole intent at the time of the April 1997 application was to move the Jones tower to the new site because the owner of the Jones property

---

[1] Neighbors' assertion that this preliminary work was somehow unrelated to the proposed tower project because the zoning administrator later approved Manosh's request for an amended permit to allow a 150-foot tower is unsupported by any citation to authority, and finds no support in reason or logic.

planned to use his land for other purposes. There was also testimony that Manosh had, in good faith, based its estimate of the tower's height on information in a relevant FCC license. A site plan dated April 17, 1998, illustrating the location of the 100-foot tower at the proposed new site, further supports the court's finding that Manosh intended to relocate the Jones tower to the new site at the time of the permit application.[2] There was also testimony and documentary evidence that several months after receiving the April 1997 permit Manosh was approached about moving the so-called village tower — which was believed to be 150 feet in height — to the new site, which led to Manosh's subsequent efforts to amend the permit to allow a 150-foot high tower and to obtain an Act 250 permit. Thus, ample evidence supported the court's conclusion that the permit was not void for misrepresentations made at the time of the application.

¶ 16. Neighbors urge, nevertheless, that the court's findings are overwhelmingly refuted by circumstantial evidence demonstrating an intent to deceive, including the fact that the permit application misstated the height of the Jones tower, failed to expressly state that Manosh intended to relocate the Jones tower, and omitted any plans to upgrade the access road to the site. Neighbors also note that within several months of receiving the permit, Manosh undertook extensive efforts to place a taller tower on the site. And they note further that Manosh failed to undertake any preliminary work at the site until January 1998,

nearly eight months after receiving the initial permit. As noted earlier, however, the trial court is entitled to weigh the evidence and the credibility of the witnesses, and its findings will not be disturbed where — as here — they are supported by credible evidence, even in the presence of substantial modifying evidence. *Gulli*, 174 Vt. at 582, 816 A.2d at 488; *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999). Accordingly, we discern no basis to disturb the trial court's conclusion that no misrepresentation had occurred at the time of the application to invalidate the permit.[3]

*Affirmed in part; the judgment voiding the April 1997 permit for failure to commence construction within one year of its issuance is reversed.*

---

[2] Although neighbors assert in passing that the trial court erroneously admitted this site-plan for lack of an adequate foundation, they produce no argument or authority to support the claim, and we therefore decline to address it. *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992).

[3] Neighbors make a brief argument that the court improperly excluded two documents allegedly relevant to the misrepresentation claim: an application, dated April 13, 1998, for an amendment to add 30 feet to an Act 250 permit allowing a tower of 160 feet at the site, and a decision of the Environmental Board, dated February 13, 1999, revoking the permit for the 160-foot tower. The court ruled that both exhibits were "too remote in time" to reflect anything material to Manosh's state of mind at the time of the April 1997 application. Citing no pertinent authority, neighbors have failed to demonstrate that the court abused its broad discretion to determine whether the evidence was too remote to be of relevance. See *In re Letourneau*, 168 Vt. 539, 554, 726 A.2d 31, 41 (1998) ("[T]he trial court has broad discretion to exclude marginally relevant evidence that is remote, tends to confuse the issues or causes a waste of time.").