STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Edgar Northshore Drive Variance Application | } | Docket No. 292-12-07 Vtec |
| (Appeal of Edgar) | } | |
|  | } | |

Decision and Order

Appellant Margaret M. Edgar, Trustee, appealed from a decision of the Development Review Board (DRB) of the Town of Ludlow denying Appellant's application for a variance. Appellant is represented by Matthew T. Birmingham, III, Esq.; the Town is represented by J. Christopher Callahan, Esq. Interested parties Jeffrey Sonshine, Dan Sonshine, and Dawn Edgar have appeared and represent themselves, but have not taken an active role.

This is an on-the-record appeal, as the Town of Ludlow has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b). In an on-the-record appeal, the DRB's factual findings[1] are to be affirmed if supported by substantial evidence in the record as a whole. In re Miller Conditional Use Application, No. 59-3-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.). Legal issues, on the other hand, are reviewed without affording deference to the DRB's legal conclusions. In re Beckstrom, 2004 VT 32, ¶ 9, 176 Vt. 622 (mem.) (citing In re

---

[1] For a discussion of the standard applicable to the DRB's factual findings in on-the-record appeals, see In re Appeal of Leikert, No. 2004-213, slip op. at 1–2 (Vt. Nov. 10, 2004) (unpublished mem.), available at http://www.vermontjudiciary.org/upeo/eo04-213.pdf. "The purpose of findings is to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." Id. at 2. This Court is cautioned against searching the record for facts not explicitly stated in the DRB's findings; the basis of the DRB's decision should be apparent from its factual findings. Id.

1

Gulli, 174 Vt. 580, 582 (2002) (mem.)).

Upon consideration of the record forwarded to the Court,[2] and of the legal memoranda and oral arguments submitted by the parties, the Court states the relevant facts supported by the evidence (or undisputed), and concludes as follows.

Appellant owns a half-acre[3] parcel of property (the Edgar parcel) on the shore of Lake Rescue, at the address of 51 Northshore Drive, in the Lake zoning district of the Town of Ludlow. A seasonal camp was constructed on the Edgar parcel in approximately 1940, before adoption of zoning in the Town.

The original camp was constructed at an angle to the lakeshore, so that its southeast corner was located approximately 42 feet from the lake. The original camp structure contained four bedrooms, two on the ground floor, and two upstairs. The property slopes down to the lake, so that the ground floor of the westerly side of the camp was located at or with the sill slightly below ground level, and the easterly or lake side of the camp was supported on a foundation of concrete blocks and piers. A large screened-in porch was located along the length of the easterly side of the camp. Below

---

[2] Some of the materials provided in the record appear to be black-and-white photocopies of the color or photographic originals, making it more difficult for the Court to interpret them, especially photographs and the plans containing a color-coded legend of which elements of the structure were existing, replacement, new or "maybe." Further, the site plan appears to have been provided in a non-standard reduced size, as it states on its face that it is at a scale of 1 inch equals 20 feet, but is in fact reduced to a scale (determined from the graphic scale also provided on the document) of 3/4 inch equals 20 feet. The Town is reminded that V.R.E.C.P. 5(h)(1)(A) requires the originals to be forwarded to the Court.

[3] Although the DRB's written decision and the parties' memoranda refer to the property as 0.38 acres or approximately 16,553 square feet in area, Attorney Birmingham informed the Court during oral argument that the property actually measures 0.54 acres or 23,522 square feet in area. The Town does not dispute this measurement. The lot is nonconforming as to its size, but is allowed to remain under § 263 of the Regulations; however, it must meet all setbacks for the district in which it is located. § 263.2.

2

the screened-in porch, the foundation was enclosed by skirting boards; no living space was located within this enclosure.

Appellant purchased the property at issue in late 2006, and began renovating the camp structure to make it suitable for year-round habitation. These renovations included installing new windows (including windows in place of the screens in the screened-in porch), enclosing the entry porch, jacking up the house, removing the original piers and concrete blocks from under the house, excavating beneath the house, and pouring new footings and a full foundation underneath the house. These renovations resulted in more living space within the structure than had previously been available in the existing structure.

In the course of the renovations, the contractor[4] lifted the westerly side of the house four inches in order to raise the sills out of the ground to prevent them from rotting. Because the structure was built on a slope, the four-inch height increase on the westerly side resulted in a twelve-inch increase in height on the easterly side, including in the portion of the southeast corner of the structure that is within the waterfront setback.

The zoning administrator determined that some of the construction activities occurring on Appellant's property required a permit and issued a Notice of Violation in late January of 2007. In response, Appellant submitted an application for a zoning permit[5] on February 8, 2007. The Zoning Administrator issued a written denial on

---

[4] Appellant states that this increase in height was done by the contractor without Appellant's advance knowledge or authorization.

[5] Appellant's Response Brief refers to the February 8, 2007 application as "an application for a Conditional Use permit;" however, the February 8, 2007 application form submitted to the Court shows that it was actually an "Application for Building/Zoning Permit," and does not show any referral to the DRB for approval as a conditional use. Compare § 220 (Zoning Permit), § 211 (Applications), with § 260 (Conditional Uses). The February 12, 2007 DRB hearing may have related to an appeal to the DRB of the Notice of Violation, which is not before the Court in the present case.

March 9, 2007,[6] stating, "[d]enied until further documentation is submitted – appears to be in violation." Appellant asserts that neither she nor her attorney received notice of the denial for several months. While the Town asserts that its practice of sending notice was followed, the Town does not dispute that neither Appellant nor her attorney received notice of the denial in March 2007.

After learning of the denial, Appellant does not appear to have attempted to take a late appeal to the DRB of the Zoning Administrator's denial of the February 2007 zoning application. Rather, Appellant applied for a variance from the waterfront setback in August 2007. The DRB held a hearing on the variance application on October 22, 2007 and also took a site visit to the property.[7] Appellant was instructed to submit all materials for consideration by the DRB at least ten days before the public hearing.

At the hearing, the Zoning Administrator appears to have acted in part as staff for the DRB, by submitting a "Statement of the Case," describing the renovations and the Notice of Violation, outlining the issues with regard to the property and her view of the reasons that the variance should be denied. After Appellant objected to the submission of this statement as untimely and not within the authority of the Zoning Administrator, the DRB allowed Appellant to file a response after the hearing.

The DRB's written decision denying the variance was issued on January 16, 2008. The DRB's decision listed the four renovations completed by Appellant that it considered required a variance:

a. Installed new windows, including enclosing the screen porch, creating living area. (Structural changes)
b. Removed the original piers and concrete blocks from under the house,

---

[6] Although the DRB's November 2007 written decision refers to the February 8, 2007 application as having been "rejected on February 9, 2007," the application form reflects that the written denial was issued on March 9, 2007.

[7] No record appears to have been made of the site visit; the DRB's observations at the site visit therefore cannot be reviewed by this court , despite the DRB's statement in its November 2007 decision that it relied on those observations.

and excavated out underneath the whole residence, creating a full walk out basement with bedrooms.

c. Lifted the house, and poured new footings and a full foundation underneath the house.

d. Enclosed the entry porch[.]

Based on the memoranda submitted by the Town and on statements made by the Town's attorney during oral argument, it appears that the Town no longer disputes that the installation of windows and enclosure of the entry porch described in (a) and (d) above did not require a variance. Accordingly, what remains at issue in the present case is whether a variance is required for the excavation and construction of a basement ((b) above), or for the increase in vertical height of the structure ((c) above), and, if so, whether a variance is needed only for that portion of the structure within the setback area, and whether the DRB's denial of the variance was supported by substantial evidence in the record as a whole.

### Nonconforming structure

The minimum waterfront setback in the Lakes zoning district is 50 feet. § 430.[8] The southeast corner of the existing structure is 42.2 feet from the edge of the lake, as shown on a site plan prepared from a survey conducted on October 12, 2007,[9] in preparation for the October 22, 2007 DRB hearing. Only a small portion of the existing structure was therefore nonconforming[10] as to the waterfront setback: that is, the

---

[8]    All section references are to the Town of Ludlow Zoning and Flood Hazard Regulations (Regulations) unless otherwise noted.

[9]  The site plan states that the measurement to the lake shore "is as it was flowed" on October 12, 2007. The Regulations do not define waterfront setback or otherwise define whether the measurement should be made to the low water mark, a mean water mark, or the high water mark.

[10] See § 262.1.

southeast corner extending approximately 7.8 feet[11] into the structure, or approximately eleven feet[12] along each side of the structure measuring out from the corner. A nonconforming portion of a structure may be maintained or repaired, but "[a]ny expansion[,] including vertical and/or enlargement[,] to a nonconforming structure must comply with all aspects of the Regulations." § 262.2. As the Regulations do not contain any provisions allowing or regulating the expansion or alteration of nonconforming structures, 24 V.S.A. § 4412(7)(A)(iii), and do not contain any waiver provisions for the waterfront setback or any other dimensional nonconformities, 24 V.S.A. § 4414(8), any such expansion that does not conform to the Regulations would require a variance from the DRB under § 252.[13]

Because the term "nonconforming structure" is defined in § 262.1 as either a "structure or part of a structure" (emphasis added), either a whole structure or only a portion of it may be nonconforming. If it is only a part of the structure that is nonconforming, it is only that part which cannot be expanded or enlarged without a variance. The other parts of the structure that comply with all the requirements of the ordinance may be expanded or enlarged without triggering this section. Many of the renovations undertaken by Appellant did not require a variance, as they either occurred on portions of the existing structure that conformed to the minimum setback, or they fell under the provision of § 262.2 allowing the maintenance and repair of nonconforming structures.

---

[11] Derived by subtracting the 42.2-foot measurement on the site plan from the 50-foot waterfront setback.

[12] Derived from elementary geometry: $\sqrt{(7.8)^2 + (7.8)^2}$.

[13] Although the DRB's written decision and Appellant's Statement of Questions and memoranda sometimes refer to "Article 3 [§] 350.3" as the section of the ordinance containing the variance criteria, there is no § 350.3 in Article 3 of the edition of the ordinance provided as part of the record in this matter. Rather, the variance criteria are found in § 252, as referred to elsewhere in the DRB's written decision and in Appellant's memoranda.

The Ludlow zoning ordinance considers the volume between a floor (or the ground) and a roofed portion of a structure to be part of the pre-existing nonconforming structure, regardless of whether it is enclosed or is open at the sides. Section 520.2 provides in pertinent part that, "[i]n determining . . . the size of yards" (defined in Article 7), "porches or carports open at the sides but roofed, . . . shall be included." The definition of the term "yard" in Article 7 defines the minimum required yard as measured by the minimum required setback, perpendicular to the respective lot line. It requires that "[p]orches and decks, whether enclosed or not enclosed, shall be considered part of the main building and shall not project into a required yard."

Because the space under the screened-in porch was already part of the existing structure, whether or not enclosed by the skirting boards, the existing structure was not enlarged by the renovations done within that volume of space. Nothing in the ordinance defines the creation of living space out of storage or non-finished space within an existing structure as an enlargement of that structure. Therefore, alterations such as installing windows in place of screens or converting interior storage space to living space is not expansion.

On the other hand, because § 262.2 defines expansion to encompass vertical as well as lateral enlargement of the nonconforming portion of the structure, any enlargement beyond the existing volume of the structure under the roofed areas triggers § 262.2. Since adding twelve inches to the foundation increased the height of and thereby created a vertical expansion to the portion of the structure that is within the waterfront setback, a variance was required for the additional twelve inches of height, but only in the nonconforming corner portion of the structure.

Variance criteria

To obtain a variance, Appellant's application must meet all five of the criteria in § 252.1 of the Regulations (provided here as numbered in 24 V.S.A. § 4469(a)):

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That the unnecessary hardship has not been created by the [applicant];

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.

If any one of the criteria is not met, a variance must be denied. In re Dunnett, 172 Vt. 196, 199–200 (2001) (citing Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989)); In re Mulheron, No. 2002-090, slip op. at 3 (Vt. Sept. 25, 2002) (unpublished mem.), available at http://www.vermontjudiciary.org/upeo/eo02090.htm (citing In re Dunnett, 172 Vt. at 199–200). The DRB found that the application failed to meet all of the criteria except criterion four.

Although the DRB was considering the application for a variance as if it pertained to the entire renovated space above and below the existing camp, and not just to the relatively small areas above and below the nonconforming southeast corner, we will examine the DRB's decision on each of the criteria as it pertains to that corner, to determine whether there is substantial evidence in the record as a whole to support the denial of the variance as to that corner.

8

There is substantial evidence in the record as a whole that the property contained a reasonable use before the renovations, and as all of the renovated area other than that above the nonconforming southeast corner is allowed to remain without requiring a variance, the evidence supports the DRB's conclusion that the second criterion cannot be met for the renovations above the nonconforming southeast corner. Accordingly, the DRB's decision is upheld only with regard to the renovations above the nonconforming southeast corner: that they do not qualify for a variance.

Equal Protection

Appellant argues that the DRB should have granted a variance in the present case based on variances it has granted in similar cases in the past. However, because none of the other instances adduced by Appellant were appealed to this Court, the Court cannot determine whether the DRB applied the ordinance and the statutory requirements of 24 V.S.A. § 4469(a) properly in those instances. The Court is obligated to apply the statutory requirements and the particular municipality's ordinance as they are written and, in on-the-record cases, must hold the DRB to the same requirements.

Zoning Administrator's memorandum to the DRB

Appellant also argues that the Zoning Administrator's memorandum went beyond the duties and authority of an administrative officer, as described in 24 V.S.A. § 4448, and that a remand to the DRB is necessary to cure the prejudice that resulted from the DRB's viewing of the zoning administrator's memorandum.

A zoning administrator is precluded from membership in the DRB, as one of the DRB's functions is to hear appeals from decisions of the zoning administrator. 24 V.S.A. §§ 4448(a), 4465. While participating in a DRB's deliberations is outside the scope of the zoning administrator's authority, the statute is silent as to the degree to which a zoning administrator can function as the DRB's staff during a hearing. Given the decision in

9

the present case, however, it is not necessary to reach this issue or to remand the matter to the DRB.

Deemed approval of February 2007 application

Any issues regarding the Zoning Administrator's decision not to approve the February 2007 zoning permit application are not before the Court, because Appellant did not appeal the denial of the zoning application or seek to file a late appeal after receiving actual notice, and it became final. 24 V.S.A. § 4472(d). Rather, Appellant applied for a variance. Even though this is an on-the-record appeal, all that is before the Court is the application for a variance.

We therefore do not address whether the permit application was sufficiently complete to trigger the requirement in § 222 and 24 V.S.A. § 4448(d) that the zoning administrator "act with regard to a complete application for a permit" within 30 days. Nor do we address whether the failure to provide notice of the zoning administrator's decision, without intentional withholding of the decision, would trigger deemed approval under 24 V.S.A. § 4448(d). See In re Trahan, 2008 VT 90, ¶ 15; In re Griffin, 2006 VT 75, ¶¶ 14–15, 180 Vt. 589 (mem.).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that only the renovations to the portion of the structure protruding into the lakeshore setback constituted alterations to a nonconforming structure under § 262.2. Any renovations that extended beyond the volume of space demarcated by the existing nonconforming portion of the structure are prohibited by § 262.2 without a variance. In the present case, the only portion of the renovations requiring a variance is the approximately one foot of additional height of renovations above the triangle of existing nonconforming structure.

As discussed above, the DRB's decision denying the variance is therefore upheld

only as to the approximately one foot of additional height of renovations above the triangle of existing nonconforming structure.

Appellant shall prepare a judgment order, to be approved as to form by the Town. In the event of disagreement, on or before February 12, 2009, each party may provide a proposed judgment order.

Done at Berlin, Vermont, this 5th day of February, 2009.

_____
                Merideth Wright
                Environmental Judge