STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| | } | |
| In re: Curry Variance Application | } | Docket No. 222-10-07 Vtec |
| (Appeal of Curry) | } | |
| | } | |

Decision and Order

Appellants Thomas and Martha Curry appealed from a decision of the Development Review Board (DRB) of the Town of Ludlow, denying Appellants' application for a variance for renovations to a nonconforming structure. Although Appellants were represented by counsel before the DRB and in filing the notice of appeal, Appellants have appeared and represent themselves; the Town is represented by J. Christopher Callahan, Esq.

This is an on-the-record appeal, as the Town of Ludlow has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b). The lack of an electronic record of the first of the two DRB hearings held in this matter was resolved by the parties' agreed reconstruction of the unavailable portion of the record pursuant to V.R.A.P. 10(c). See June 27, 2008 Entry Order. Appellants have requested a site visit by the Court; however, in an on-the-record appeal, the Court is limited to reviewing the record made before the DRB.

In an on-the-record appeal, the DRB's factual findings[1] are to be affirmed if

---

[1] For a discussion of the standard applicable to the DRB's factual findings in on-the-record appeals, see In re Appeal of Leikert, No. 2004-213, slip op. at 1–2 (Vt. Nov. 10, 2004) (unpublished mem.), available at http://www.vermontjudiciary.org/upeo/eo04-213.pdf. "The purpose of findings is to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." Id. at 2. This Court is cautioned against searching the record for facts not

1

supported by substantial evidence in the record as a whole.  In re Miller Conditional Use Application, No. 59-3-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.). Legal issues, on the other hand, are reviewed without affording deference to the DRB's legal conclusions.  In re Beckstrom, 2004 VT 32, ¶ 9, 176 Vt. 622 (mem.) (citing In re Gulli, 174 Vt. 580, 582 (2002) (mem.)).

Upon consideration of the record[2] as reconstructed and forwarded to the Court,[3] and of the legal memoranda submitted by the parties, the Court states the relevant facts supported by the evidence (or undisputed), and concludes as follows.

Appellants' property is located on the shore of Lake Rescue, at the address of 47 Red Bridge Road, in the Lakes zoning district of the Town of Ludlow.  The property is approximately 0.04 acres, or approximately 1,742 square feet, in area.  It is nonconforming as to lot size.  § 263 of the Regulations.[4]

Appellants' lot contains a T-shaped structure that was historically used as a seasonal camp and was constructed before the adoption of zoning in Ludlow.  The structure is built on a slope facing the lake.  At the elevation of the road, the ground level of the existing structure contained a kitchen, bathroom, living room, and bedroom, with a loft room above the central portion of the structure.  An additional room was located downstairs facing the lake, beneath the living room.  Wooden decks wrap

---

explicitly stated in the DRB's findings; the basis of the DRB's decision should be apparent from its factual findings.  Id.

[2] The zoning ordinance applicable to this appeal was not provided as part of the record; the DRB decisions refer to the ordinance as the one most recently amended on May 1, 2006.  The Court has used the edition of the ordinance adopted February 7, 2005, and amended December 2, 2007, provided in another Ludlow case.

[3]  Some of the materials provided in the record appear to be black-and-white copies of color originals, making it difficult for the Court to interpret them.  The Town is reminded that V.R.E.C.P. 5(h)(1)(A) requires the originals to be forwarded to the Court.

[4] All references to section numbers are to the Town of Ludlow Zoning and Flood Hazard Regulations unless otherwise noted.

around both sides of the existing structure. The existing roof extended beyond the structure walls by approximately two feet on each side, but the overhang did not extend over the entire four-foot width of the existing easterly walkway/deck or over the entire five-foot width of the existing westerly deck.

The existing structure was located at the edge of the lake, 24 feet from the center of Red Bridge Road, and less than 15 feet from each side property line.[5] The existing structure was located entirely within the waterfront setback, and extended into the front setback and both side setbacks.

Appellants purchased the property in late 2006 and shortly thereafter began renovating the structure to repair damage caused by a fire and to make the camp suitable for year-round habitation. These renovations included removing the lower level 224-square-foot room, removing the front entrance (although leaving the door in place for aesthetic purposes) so that entry is by way of the existing easterly[6] side walkway/deck to the existing easterly side entrance, expanding ten feet of the existing westerly side of the building by 2½ feet onto the westerly side existing deck under the existing roof overhang[7] (to accommodate an enlarged bathroom with stacked washer and dryer), and extending the roof overhangs. The westerly roof overhang was

---

[5]  The only diagram showing the setbacks to the property line shows the setbacks to the new extended roof, and shows the width of the existing decks on both sides. The setbacks to the outside edges of the existing decks were approximately 12 feet on each side.

[6]  The parking space is located close to the front end of the easterly side walkway.

[7]  There is evidence in the record, Exhibit B to Appellant-Applicants' Project Description, and the text of that description in support of the variance application, to support this fact, which was also stated in an argument made in a June 14, 2007 letter by Appellants' attorney that is also part of the record. The DRB's Finding 7 is less clear, as it relates to both the bathroom expansion and the extension for the westerly roof overhang. While Finding 7 focuses on the extension of the westerly roof overhang beyond the edge of the westerly existing deck, and on the expansion in interior living space, its use of the word "includes" seems to state (or is at least not inconsistent with) the asserted fact that the bathroom expansion was built under the roof overhang.

extended to be eight feet wide, resulting in an approximately nine foot setback to the westerly side property line; however, this roof extension has since been removed. The easterly roof overhang was extended by approximately thirty inches to be five feet wide and to overhang the existing deck/walkway by approximately eighteen inches, resulting in an eleven foot setback to the easterly property line.

Appellants originally believed that the renovations would not require a zoning permit, but after a site visit, the Zoning Administrator determined that a permit was required for some of the renovations. Appellants applied for a "Building/Zoning Permit" for "renovation" on April 4, 2007. The Zoning Administrator denied the application on April 11, 2007, determining that certain aspects of the renovations required a variance. Appellants did not appeal the Zoning Administrator's decision to the DRB. Rather, they submitted an application for a variance from the waterfront and side yard setbacks on April 13, 2007.

The DRB held a site visit[8] and a public hearing on May 14, 2007. The DRB's written decision denying the variance was issued on June 12, 2007.[9] On July 9, 2007, Appellants filed a request for reconsideration of their variance application with the DRB. A public hearing was held on the reconsideration on August 13, 2007, at which Appellants were given the opportunity to present additional evidence. The DRB's written decision on the reconsideration, again denying the variance, was issued on September 12, 2007. This appeal followed.

Appellants have asked to the Court to determine whether a variance was required for the expansion of the bathroom and extension of the roof overhangs, and if

---

[8] No record appears to have been made of the site visit; the DRB's observations at the site visit therefore cannot be reviewed by this court, despite the DRB's statement in its June 12, 2007 decision that it relied on those observations.

[9] Although the written decision is dated June 12, 2006, the year is evidently a typographical error, as Appellants did not even purchase the property until late 2006, and the application was submitted and the hearing was held in 2007.

4

so, whether the criteria for granting a variance are met. Since filing this appeal, Appellants have removed the extension to the roof overhang on the westerly side of the structure; therefore, the only remaining issues relate to the bathroom expansion and the extension of the roof overhang over the walkway to the entrance on the easterly side of the house.

Nonconformities

The minimum waterfront setback in the Lakes zoning district is 50 feet. § 430. The existing structure is located entirely within the waterfront setback; indeed, as the parcel is only approximately 32 feet in depth, the entire property is located within the waterfront setback. The minimum side setback in the Lake district is 15 feet. Id. The existing structure was located less than fifteen feet from each side property line. The existing structure was therefore nonconforming as to the side and waterfront setbacks. § 262.1.

A nonconforming structure may be maintained or repaired, but "[a]ny expansion[,] including vertical and/or enlargement[,] to a nonconforming structure must comply with all aspects of the Regulations." § 262.2. As the Regulations do not contain now any provisions allowing or regulating the expansion or alteration of nonconforming structures, 24 V.S.A. § 4412(7)(A)(iii), and do not contain any waiver provisions for the waterfront setback or any other dimensional nonconformities, 24 V.S.A. § 4414(8), any such expansion that does not conform to the Regulations would require a variance from the DRB under § 252.[10]

The case before the Court involves the bathroom renovations that extended a

---

[10] Although the DRB's written decisions sometimes refer to "Article 3 [§] 350.3" as the section of the ordinance containing the variance criteria, there is no § 350.3 in Article 3 of the edition of the ordinance used by the Court (see footnote 2 above). Rather, the variance criteria are found in § 252, as referred to elsewhere in the DRB's written decisions.

5

portion of the westerly side wall into the area already demarcated by the existing roof and the existing floor of a roofed porch that is open at the sides (unenclosed) and extends into the setback area. This work does not constitute an expansion or enlargement to a nonconforming structure under § 262.2 if it is entirely located within the volume of space that is <u>already</u> defined as being part of the existing nonconforming structure.

Any porch or deck which extends into the setback is nonconforming, whether it is an open deck, or has a roof, or is enclosed or open at the sides. Article 7, "Yard." [11]

However, to determine whether construction on a nonconforming deck constitutes an expansion or enlargement to the nonconforming structure, or instead is entirely located within the volume of space that is already considered to be part of the existing nonconforming structure, the Ludlow zoning ordinance distinguishes between roofed and unroofed porches. The ordinance considers the entire volume between the deck or floor of a roofed porch and its roof to be part of the pre-existing nonconforming structure; it is treated the same as an enclosed building. Section 520.2 provides that, "[i]n determining . . . the size of yards" (as defined in Article 7), "porches or carports <u>open at the sides but roofed</u>, and all principal and accessory buildings, shall be included" (emphasis added). Thus, construction above an existing unroofed deck within a setback area would constitute expansion of the nonconforming structure, while construction between the deck and the roof of an existing roofed deck would not constitute expansion of the nonconforming structure.

Appellants suggest that a variance is not required for the renovations at issue because no enlargement or expansion of the overall structure occurred, as the house

---

[11] The definition of the term "yard" in Article 7 defines the minimum required yard as measured by the minimum required setback, perpendicular to the respective lot line. It requires that "[p]orches and decks, whether enclosed or not enclosed, shall be considered part of the main building and shall not project into a required yard."

now contains less square footage of living space than it did before the renovations. First, the removal of the downstairs room did not reduce the volume of nonconforming structure, as the area between the ground and the floor of the living room is still considered to be within the structure. Moreover, even if the removal of the room had reduced the volume of the structure within the setback, nothing in the language of § 262.2 suggests that expansion of one part of a nonconforming structure is permissible without a variance if other parts of the structure are reduced in size, even if that reduction in size reduces the overall degree of nonconformity. There is no provision in the Ludlow ordinance that allows expansion in one portion of a nonconforming structure to be offset by reduction in another portion of a nonconforming structure. To the contrary, the language of § 262.2 makes it clear that "<u>any</u> expansion" of a nonconforming structure that does not comply with the regulations is impermissible, regardless of the effects of other renovations occurring on the structure (emphasis added).

Appellants' renovations to the westerly wall resulted in a ten-foot-long section of the outside wall extending 2½ feet further westerly, but remaining under the existing[12] roofed portion of the westerly side deck. Because the additional interior space created by this renovation was already defined as being within the nonconforming structure, if the renovation extended no further than the existing roof of the westerly deck, this renovation did not constitute an enlargement or expansion of the nonconforming structure, and therefore did not require a variance.

On the other hand, both the extension of the roof overhang on the westerly side of the house (since removed) and the extension of the roof overhang on the easterly side of the house did constitute an expansion of the structure further into the side setback area, requiring a variance under § 262.2.

---

[12] See footnote 7, above.

Variance Criteria

To obtain a variance, Appellants' application must meet all of five criteria listed in § 252.1 of the Regulations, which are taken almost verbatim from 24 V.S.A. § 4469(a):

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship[13] is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located; [and]

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property; [and]

(3) That the unnecessary hardship has not been created by the [applicant]; [and]

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.

If any one of the criteria is not met, a variance must be denied. In re Dunnett, 172 Vt. 196, 199–200 (2001) (citing Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989)); In re Mulheron, No. 2002-090, slip op. at 3 (Vt. Sept. 25, 2002) (unpublished mem.), available at http://www.vermontjudiciary.org/upeo/eo02090.htm (citing In re Dunnett, 172 Vt. at 199–200). The DRB found that the application failed to meet all of

---

[13] The "hardship" must be a result of the physical characteristics of the property, not a personal hardship suffered by the applicant. See, e.g., In re Hartwell & Egri Variance Appeal, No. 114-6-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Oct. 2, 2006) (Wright, J.) (citing Sorg v. North Hero Zoning Bd. of Adjustment, 135 Vt. 423, 426 (1977)).

the criteria except criterion four.

Although the DRB was considering the application for a variance both for the bathroom renovation within the roofed portion of the westerly deck, and for the extensions of the roof overhangs, we will examine the DRB's decision on each of the criteria as it pertains only to the easterly roof overhang, to determine whether there is substantial evidence in the record as a whole to support the denial of the variance as to the easterly roof expansion.

There is substantial evidence in the record as a whole that the property as renovated, but without the extension of the roof overhang over the easterly deck, allows a reasonable use of the property, even though Appellants would find it easier and safer to use the property in the winter with the extension of the roof overhang over the easterly deck. The evidence therefore supports the DRB's conclusion that the second criterion cannot be met for the extension of the roof overhang over the easterly deck. Accordingly, the DRB's decision is upheld only with regard to the extension of the roof overhang over the easterly deck: that it does not qualify for a variance.

Safety of Structure

Section 262.2, which allows nonconforming structures to be maintained or repaired, but prohibits any nonconforming expansion or enlargement, also states that "[t]his Section shall not be construed to permit any unsafe structure, or to affect any proper procedures to regulate or prohibit the unsafe use of a structure."

Appellants argue that, without the easterly roof overhang extension, the existing structure on their property is unsafe for Mrs. Curry in the winter, due to a medical condition that makes movement difficult. They presented evidence at the August DRB hearing that the extension to the easterly side roof overhang is meant to prevent ice and snow from accumulating on the walkway/deck leading from the parking space around the side of the house to the entrance, and that Mrs. Curry has already fallen once on this

walkway.

The safety language in § 262.2 does not create an exemption for expansions or enlargements to nonconforming structures that are necessary to ensure that the structure is safe. To the contrary, in the context of § 262.2 (entitled "Continuation of Nonconforming Structure") the language quoted above provides that an unsafe nonconforming structure is not exempt from safety or health regulations simply because of its nonconforming status. It does not authorize enlargement or expansion to a nonconforming structure argued to be necessary to protect the safety of its owners.

Equal Protection

Appellant argues that the DRB should have granted a variance in the present case based on variances it has granted in similar cases in the past. However, because none of the other instances adduced by Appellant were appealed to this Court, the Court cannot determine whether the DRB applied the ordinance and the statutory requirements of 24 V.S.A. § 4469(a) properly in those instances. The Court is obligated to apply the statutory requirements and the particular municipality's ordinance as they are written and, in on-the-record cases, must hold the DRB to the same requirements.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

To the extent that the bathroom renovations were built under the existing roof overhang, they did not constitute an expansion or enlargement under § 262.2 and therefore did not require a variance. Appellants' extension of the easterly side roof overhang constituted expansion or enlargement of a nonconforming structure under § 262.2. Section 262.2 does not create an exemption for expansions even if shown to be necessary for safety reasons; therefore extension of the easterly side roof overhang was not permissible without a variance. As discussed above, the DRB's decision denying

10

the variance as to the extension of the easterly side roof overhang is supported by substantial evidence in the record and is therefore upheld, concluding this appeal

Done at Berlin, Vermont, this 5th day of February, 2009.

_____
Merideth Wright
Environmental Judge