STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Sprague Farms, LLC | } | Docket No. 107-6-08 Vtec |
| (Appeal of Angell, et al.) | } | |
| (Cross-Appeal of Sprague Farms, LLC) | } | |
| | } | |

Decision and Order

Appellants Philip A. Angell, Jr., Rosalie M. Angell, David Deep, Joseph Duranchinski, Arthur Fisher, Betsy D. Hale, Norman R. Runnion, and Christian T. Scheindel appealed from a decision of the Development Review Board (DRB) of the Town of Randolph, granting Cross-Appellant-Applicant Sprague Farms, LLC (Applicant) approval for a ledge rock quarry, with stone crushing, on property located on Ridge Road in Randolph. Appellants are represented by Stephen Reynes, Esq. and Jesse L. Moorman, Esq. Applicant is represented by Christopher J. Nordle, Esq. The Town has appeared through its Zoning Administrator, Mardee A. Sánchez.[1]

This is an on-the-record appeal, as the Town of Randolph has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b). In an on-the-record appeal, the DRB's factual findings are to be affirmed if supported by substantial evidence in the record as a whole. In re Miller Conditional Use Application, No. 59-3-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.).[2]

---

[1]  The Town has not participated in the briefing of any issues in this appeal.

[2]  For a discussion of the standard applicable to the DRB's factual findings in on-the-record appeals, see In re Appeal of Leikert, No. 2004-213, slip op. at 1–2 (Vt. Nov. 10, 2004) (unpublished mem.), available at http://www.vermontjudiciary.org/upeo/eo04-213.pdf. "The purpose of findings is to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." Id. at 2. This Court is cautioned against searching the record for facts not

Legal issues, on the other hand, are reviewed without affording deference to the DRB's legal conclusions. In re Beckstrom, 2004 VT 32, ¶ 9, 176 Vt. 622 (mem.) (citing In re Gulli, 174 Vt. 580, 582 (2002) (mem.)).

Upon consideration of the record forwarded to the Court, and of the legal memoranda submitted by the parties, the Court states the relevant facts supported by the evidence (or undisputed), and concludes as follows.

Quarry

Applicant proposes a rock quarry, which would involve the blasting and removal of rock, sometimes called "ledge" rock, as distinct from the digging up and removal of gravel or other loose or unconsolidated earth materials. The first legal issue is whether the use category of "rock quarry" is a use that is allowed to be applied for in this zoning district.

As contrasted with the use category of "rock quarry," the activity of digging and removal of earth, sand, gravel and clay (that is, unconsolidated earth materials) is regulated by § 5.15 of the Randolph Zoning Regulations (Regulations), rather than being specifically classified as a conditional use or permitted use category in any zoning district. The state zoning enabling statute allows municipalities to take this approach, that is, to "specify standards or levels of performance" in connection with a specific use as "an alternative or supplement to the listing of specific uses" allowed in the zoning districts. 24 V.S.A. § 4414(5).

Removal of unconsolidated earth materials is allowed in any district under § 5.15.3 after a public hearing and approval by the DRB.[3] Section 5.15.3 allows the DRB

explicitly stated in the DRB's findings; the basis of the DRB's decision should be apparent from its factual findings. Id.

[3] The question of whether § 5.15 provides adequate standards for the DRB to make this decision is not before the Court in the present appeal.

to impose any of the conditions listed in the subsections of § 5.15.3 "to protect the public safety and public interest." The conditions enumerated in § 5.15.3 address a grading plan for the removal area, the proper drainage of the area, and, at the conclusion of the operation, covering the removal area with top soil and establishing a cover crop, "except where ledge rock is exposed." § 5.15.3(a)–(d).

By its terms, § 5.15 does not cover or contemplate the removal of rock or stone materials that require drilling or blasting, such as ledge rock. However, § 5.15 does refer to "ledge rock" in two places. If the sides of a removal area are composed of "ledge rock," subsection (b) allows a steeper slope than otherwise would be allowed. Subsection (c) exempts areas "where ledge rock is exposed" from the requirement of establishing a suitable cover crop. It is reasonable to infer from these references that § 5.15 contemplates that existing outcroppings of rock would remain in place during the removal of the unconsolidated earth materials regulated by § 5.15.

Unlike the regulation of the removal of unconsolidated earth materials, the Randolph Zoning Regulations do not regulate the use category of stone or ledge rock quarries, either by specifying standards or levels of performance in a separate provision, or by making the use category of "stone or rock quarry" a permitted or conditional use in any district.

Use categories that are "not specifically permitted"[4] under the Regulations, such as the use category of "stone or rock quarry," are prohibited unless authorized under § 2.4.3. The first sentence of § 2.4.3 provides that

---

[4] In this first phrase of § 2.4.3, the word "permitted" is used in the more general sense of being allowed to be applied for in the Regulations as either a permitted or conditional use, rather than to distinguish "permitted" uses from "conditional" uses. See In re: Appeal of French, No. 98-7-01 Vtec, slip op. at 2 (Vt. Envtl. Ct. March 4, 2002) (Wright, J.) (explaining that uses "not specifically permitted" refers to any use "not specifically listed as an allowed use" in any zoning district, whether it be a 'permitted use' or a 'conditional use').

[a]ny use not specifically permitted by this Regulation shall be prohibited unless authorized by the BOARD if it finds, after a duly warned public hearing, that the proposed use is not injurious, obnoxious, or offensive[,] and is in keeping with the Character and [the] permitted uses in the Zoning District.

As discussed in French, "[u]nlike the regulations of some other municipalities, the Randolph Zoning Regulations do not provide for a category of 'other uses similar to the listed uses' which can be approved 'as a conditional use' by the DRB."  French, No. 98-7-01 Vtec, slip op. at 2.  Compare zoning ordinances defining such similar use categories as a conditional use, e.g., Lyndon Zoning Bylaws § 3.6.2.20 (allowing "other similar uses upon the finding by the Board that such uses will not be detrimental to other uses in the [specific zoning district] or to adjoining land uses") (analyzed in In re Appeal of Davis, No. 83-5-98 Vtec, slip op. at 1, n.1 (Vt. Envtl. Ct. Jan. 4, 1999) (Wright, J.)); Colchester Zoning Regulations § 1203.1 (allowing "other commercial uses" upon a finding that "such use is of the same general character as those permitted and which will not be detrimental to the other uses within the district or to the adjoining land uses") (analyzed in In re Sisters and Brothers Investment Group, LLP, No. 281-12-02 Vtec, slip op. at 3 (Vt. Envtl. Ct. Aug. 6, 2003) (Wright, J.)), rev'd other grounds No. 2004-495 (Vt. May 5, 2005) (unpublished mem.)).  Under such ordinances, after the DRB makes the "same general character" determination and the "non-detrimental" determination, the application must undergo conditional use approval before the DRB.[5]

---

[5]  Because these ordinances require the "other similar use" to undergo conditional use approval, the appropriate comparison is to all of the uses listed as allowed for the district: conditional as well as permitted.  See, e.g., In re Sisters and Brothers, No. 281-12-02, slip op. at 3.  Because the Randolph ordinance does not require the uses under § 2.4.3 to undergo conditional use approval, the appropriate comparison should be limited to the uses actually listed as "permitted uses" for the particular district, rather than both permitted and conditional uses.  In the present case, the DRB instead compared the proposal to the conditional uses listed for the district, which is improper under the regulatory framework.

By contrast, under the Randolph Zoning Regulations, § 2.4.3 does not provide a mechanism for the DRB to approve a new use category for a proposal that would thereafter undergo conditional use approval under § 3.4.1.  Rather, § 2.4.3 establishes an alternate procedure for the DRB to approve an application for a use not specifically listed for any district (or not otherwise specifically allowed in the Regulations, such as the removal of unconsolidated earth materials under § 5.15).  Section 2.4.3 does not authorize the DRB to establish new use categories; it simply allows the DRB to approve a specific application for an otherwise-prohibited use.

Although the enabling legislation is quite flexible and inclusive of many different approaches to drafting zoning regulations, § 2.4.3 does not fall specifically within any of the enabling act sections, in particular, 24 V.S.A. §§ 4414(1)[6] and 4414(5).[7]  Section 2.4.3 neither requires conditional use review for a non-listed use category, nor does it specify acceptable standards or levels of performance for such non-listed uses, either specifically or by reference to the Act 250 state standards.

Rather, if a proposal is specifically classified as a conditional use, § 2.4.3 does not apply.  To be approved, a proposed conditional use must undergo scrutiny by the DRB under all of the criteria in § 3.4.1 for conditional use approval, as well as under the five statutory criteria required by 24 V.S.A. § 4414(3)(A), which are made applicable in Randolph by the final sentence of § 3.4.1.  In granting conditional use approval, the DRB

---

[6]   Section 4414(1) of Title 24 authorizes municipalities to identify in their regulations, for each zoning district, two categories of land uses: those land uses that are "permitted as of right," and those that are "conditional uses requiring [conditional use] approval" by the DRB.  As well as the statutory conditional use standards, municipalities may adopt any of the Act 250 review criteria, including 10 V.S.A. § 6086(9)(E) (extraction of earth resources), as standards to use in conditional use review. 24 V.S.A. § 4414(3)(B), (C).

[7]   Section 4414(5) of Title 24 allows municipal regulations to "specify acceptable standards or levels of performance that will be required in connection with any use," in lieu of or supplementary to the listing of specific uses allowed in the specific districts.

can impose appropriate conditions to assure that the proposal would meet the conditional use standards when in operation.

On the other hand, in a district in which the same proposed use is not allowed at all, even as a conditional use (making it a use "not specifically permitted" for the purposes of § 2.4.3), § 2.4.3 allows the DRB to approve an otherwise-prohibited use after much less rigorous scrutiny than that required for a conditional use.  The specific conditional use standards under 24 V.S.A. § 4414(3)(A), requiring no undue adverse effect in traffic and on the character of the area, among other things, do not apply. The specific conditional use standards under § 3.4.1, addressing traffic safety, traffic access, noise, odors, road standards, screening, and runoff control, among other things, do not apply.  The specific statutory definition of "character of the area" for conditional use approval in 24 V.S.A. § 4414(3)(A)(iii), defining it in terms of the purposes of the zoning district and the "specifically stated  policies and standards of the municipal plan," also does not apply.  By making it easier to obtain approval for an otherwise-prohibited use than for a listed conditional use, the Regulations contain an internal conflict creating an absurd result.  See In re Miller, 2009 VT 36, ¶ 17 (stating the Court's "presumption against statutory [and regulatory] interpretations that produce absurd results (citing State v. Longley, 2007 VT 101, ¶ 10, 182 Vt. 452)).

Due to this anomaly, the DRB in the present case, as it did in French, appears to have applied some of the conditional use standards to the rock quarry, rather than applying only the provisions of § 2.4.3.  See DRB Decision at p. 10–12, Conclusions, § 2 Conditional Use Criteria: § 2(C)("the additional [traffic] generated by the quarry"); § 2(J) ("the traffic to and from the quarry"; portion of the road "not affected by the quarry"; "the quarry would add only 6 trucks per day on the northern end" of the road; "residents in the area of the quarry"; "it is not disputed that the quarry will generate noise, dust and vibration"); § 2(K) ("Although the stone crushing operation itself will not generate traffic, the [DRB] applied [the effect on traffic] criterion to the entire project

6

[including the quarry].") Regardless of the validity of § 2.4.3, because the DRB improperly applied the conditional use standards as well as § 2.4.3 to the quarry use, the DRB decision as to the quarry must be reversed and remanded.

However, in the present case Appellants have also raised the issue that was not resolved by French: whether § 2.4.3 provides adequate standards for the DRB to make a decision under that provision, or whether that section is unconstitutional for being impermissibly vague and standardless. As discussed at length in In re Appeal of JAM Golf, 2008 VT 110, ¶¶ 13–14, the Court will not uphold a zoning ordinance "that 'fail[s] to provide adequate guidance,' thus leading to 'unbridled discrimination' by the [municipal] board charged with its interpretation.'" (quoting Town of Westford v. Kilburn, 131 Vt. 120, 125 (1973)). In striking down a state statute that lacked standards for the selectboard to consider when ruling on applications under an unamended zoning ordinance, the Supreme Court explained in In re Handy, 171 Vt. 336, 349 (2000), that it recognized that the intent of the statute, like the apparent intent of § 2.4.3, was to:

> give municipalities flexibility in dealing with development proposals at variance with . . . zoning rules. But a grant of flexibility . . . is constitutional only if it is accompanied by some ability of landowners to predict how discretion will be exercised and to develop proposed land uses accordingly.

In In re Handy, the Court called for "neutral, predictable, and universal administrative standards." Id.

Unlike the process of conditional use approval, which has specific statutory standards under 24 V.S.A. § 4414(3)(A) and specific regulatory standards under § 3.4.1, § 2.4.3 does not provide sufficiently specific standards for the DRB to determine whether an otherwise-prohibited use should nevertheless be allowed in a particular location. See JAM Golf, 2008 VT 110, ¶¶ 17–18.

Neither the statute nor the Regulations, nor any line of case law in effect when the Regulations were adopted, gives any definition or standards to assist the DRB, or

any landowner applying under § 2.4.3, or any neighbors of the proposed project, in determining whether a proposed use is "obnoxious," "offensive," or "injurious." The ordinance makes no references to the law of private or public nuisance to assist in interpreting any of those terms. Similarly, the ordinance does not make reference to the "character of the area" jurisprudence developed from conditional use cases (or the statutory definition), or to cases analyzing "undue adverse effect" on any of the factors developed in Act 250 jurisprudence, to interpret what it would mean for a use to be "in keeping with" the character of the area or the permitted uses allowed in the district.[8]

Because § 2.4.3 does not provide adequate standards to guide the DRB's discretion in approving an otherwise-prohibited use, because the DRB improperly applied the conditional use standards in addition to § 2.4.3 in its decision as to the quarry, and because § 2.4.3 as written is beyond the scope of the zoning enabling statute, 24 V.S.A. § 4414, the DRB's decision as to the quarry must be reversed and remanded in this on-the-record proceeding.[9] Accordingly, the Court does not reach the site plan criteria for the combined project.

Stone Crusher

Unlike a stone or rock quarry, the use category of "stone crusher" is allowed as a conditional use, but only in the RU 5 zoning district. Site plan approval for a stone crusher is required under § 4.0, regardless of the status of the quarry associated with it, as it is other than a one- or two-family dwelling. See § 4.0 (requiring site plan review "for the development of tracts for uses other than one (1) or two (2) family dwellings and appurtenances"). Because site plan approval was also required for the quarry, the

---

[8] By these examples, this Court does not suggest what standards might be appropriate to cure the constitutional defect. See In re Handy, 171 Vt. at 350.

[9] Because this decision is based on problems with § 2.4.3 on its face, as well as with § 2.4.3 as applied, it is not a decision on the merits of the application for the quarry.

DRB's findings and conclusions on site plan approval do not distinguish between the operation of the stone crusher and the quarry.

However, in light of the discussion in this decision as to the quarry, it is possible that the parties would prefer for the Court to suspend its analysis as to the stone crusher at the present time, as the discussion of the stone crusher in the DRB decision seems inextricably intertwined with that of the quarry. If the Court does proceed to analyze the DRB decision as to the stone crusher, it will determine whether the conditional use approval and site plan approval decisions of the DRB, solely as to the stone crusher, are supported by substantial evidence in the record as a whole. A telephone conference has been scheduled (see enclosed notice); the parties should discuss the procedural status of this matter with each other prior to the conference, and be prepared to state whether any party wishes the Court to proceed with the remainder of the on-the-record analysis at this time, solely as to the stone crusher, and whether any party wishes to request a remand under V.R.E.C.P. 5(i).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the DRB's approval of the quarry use under § 2.4.3 of the Zoning Regulations is reversed and remanded. A telephone conference (see enclosed notice) has been scheduled to discuss the status of the appeal as to the stone crusher.

Done at Berlin, Vermont, this 13th day of November, 2009.

_____
                    Merideth Wright
                    Environmental Judge